No. 15,250.

## JULIAN ET AL. *v.* THE STATE.

ATTORNEY GENERAL.—*Contracts.—Authority to Make.*—A contract made with the attorney general is void, unless he is expressly or impliedly authorized by statute to make it.

SAME.—*Officers with Statutory Powers.—Persons Dealing with.—Notice.*—All persons dealing with officers exercising statutory powers, and whose authority is limited by statute, are charged with notice of the scope of such officers' authority.

SAME.—*Real Estate.—Action to Recover.—Employment of Attorney.*—The attorney general has no authority to contract with an attorney for his services in the prosecution of actions in behalf of the State to recover real estate belonging to it; and of this the attorney is bound to take notice.

SAME.—*State Lands.—Attorney's Services in Recovery of.—Legislative Adjustment of Claim.*—The Legislature, by an act passed March 9, 1889, having authorized the sale of the lands, and adjusted the claim for such services, it took jurisdiction of the matter and withdrew from the courts any jurisdiction to adjudicate upon the right to recover, or the amount to be recovered.

COURT OF CLAIMS.—*Statute.—Suit Against State.— When may be Prosecuted.— Adjustment by Legislature.*—The law authorizing the State to be sued only authorizes suits to be brought in cases where there is a liability on the part of the State to the claimant, which has not been adjusted by the Legislature.

From the Marion Superior Court.

*J. B. Julian* and *J. F. Julian,* for appellants.

*L. T. Michener,* Attorney General, and *J. H. Gillett,* for the State.

OLDS, J.—This is an action for the value of appellants' services as attorneys in and about the prosecution of certain actions on behalf of the State to recover real estate belonging to the State.

The plaintiffs, the appellants, filed their complaint in the Marion Superior Court, in this case. It is alleged in the complaint that the Governor, and other State officers of

the State of Indiana, having wholly failed for nearly twenty years prior to October, 1879, to institute proceedings to recover certain lands described in the complaint, or to take any steps to protect the rights of the State, on said day Thomas W. Woollen, then the attorney general of the State of Indiana, as such officer, and for and on behalf of the State, with the approbation of the Governor, secretary, auditor and treasurer of state, employed the appellant, Jacob B. Julian, as an assistant to said attorney general, and to have the main charge and to do most of the work in the examination of the title of the State to many tracts of land of great value, situate in Newton county, in said State of Indiana, and in the prosecution of the necessary suits to recover and quiet her title in and to the same. The said John F. Julian, appellant, being a partner of said Jacob B. Julian, with the knowledge and approbation of said attorney general and his successors in office, and the officers of the State aforesaid, shared with said Jacob B. in the labors incident to said employment and is entitled to share equally in the compensation, and the said Jacob B. has executed and delivered to said John F. an assignment of the one-half of the compensation due and to become due for said services, a copy of which is set out in the complaint; that the services to be rendered under said employment were to and for the State of Indiana, and consisted not only in the examination of the State's title to said several tracts of land of great value, in Newton county, in said State, but in the preparation for the institution of a great many suits to recover the same, and in the actual commencement and prosecution of the same and other services incident thereto in the maintenance of the title of the State to said lands, said lands consisting of eight thousand acres in what was the bed of Beaver lake, in said county of Newton, of the value of $120,000 ; that it was greatly to the interest of said State not only to sue for and recover said lands, but to do so without delay, as otherwise the statute of limitations would bar the recovery of all of said land; that the busi-

ness of said attorney general was in such shape, and he was so busily engaged in the discharge of other official duties, that he could not personally attend to it, and that in the absence of help said land would have been lost to the State; that the conditions existing as aforesaid requiring the employment of a competent lawyer as an assistant, or in some manner the securing of such person to take his place under some contract or on some terms, the said Jacob B. Julian, a lawyer of long experience, was agreed upon to occupy this position and discharge the said duties under the agreement between him and said Woollen, the same being necessary under the circumstances as herein stated in protecting the rights of the State, as well as for the further reason that in the nature of the litigation it could not be closed during the official term of said Woollen, or for several years thereafter, for which reason none of the attorney generals of the State were willing or disposed to spend time in attending to such cases, and that by reason thereof the public interests demanded that some one capable of protecting the rights of the State be entrusted with that duty, and familiarizing himself with the facts and the law as to become competent and efficient in the prosecution of such actions and doing such business; that his employment involved the inquiring into and the prosecution of about thirty cases in the courts of Newton county, at least one hundred and twenty-five miles from the city of Indianapolis where the office of the attorney general is situated and the business transacted; and that during more than nine months of each year it was not possible for the attorney general to take charge of the business and give it the necessary attention, and it was, therefore, necessary to employ a competent lawyer to take charge of such business relating to such real estate. Whereupon, said Jacob B. Julian was retained and contracted with by said attorney general, in which contract all the other State officers concurred, and such contract is a reasonable one, providing compensation to be paid said Julian, and securing to the State her rights. And it is

averred that the compensation to be paid said Julian, as expressly agreed upon between said Julian and Woollen, as attorney general acting for the State, " was not to exceed ten per cent. of the value of the lands recovered, or of the proceeds thereof when sold ; within that limit was to be the value of the services that should be performed, which plaintiffs allege was at least ten per cent. of the value of the lands recovered, or the proceeds thereof when sold, amounting, in either case, to at least twelve thousand dollars ($12,000)."

Then follows a detailed statement of the services performed in preparing the cases, commencing and prosecuting the cases in the courts, laboring with legislators to permit the passage of a bill to quiet the claimant's title to the land during several sessions of the Legislature of the State, one case being finally prosecuted to final judgment, and an appeal taken to the Supreme Court of the State, and decision given in the case, which effectually settled the controversy in favor of the State and of its ownership in the land.

It is further averred that the defendant, after knowing of such recovery through the plaintiff's efforts, abandoned through the Legislature as aforesaid all claim to the said lands, and refused to contend for her rights or to pay to the plaintiffs the amount due the plaintiffs, and herein demanded, or any part of it, or the damages resulting to them for the violation of said contract, and that the lands involved in said several suits above mentioned are worth the sum of $120,000, and would have sold at any time within the last ten years for that amount, ten per cent. of which is the limit of said plaintiffs' demand, which, including the cash expended at divers times, they put at twelve thousand dollars ($12,000), for which sum they demand judgment.

A demurrer was filed to the complaint for cause that the complaint does not state facts sufficient to constitute a cause of action, which demurrer was sustained by the court, and exceptions reserved, and the rulings assigned as error.

An act of the Legislature, approved March 9th, 1889, au-

thorizes any person or persons having, or claiming to have, a money demand against the State of Indiana, arising at law or equity, express or implied, accruing within fifteen years from the time of the commencement of the action, to bring suit against the State therefor in the superior court of Marion county, Indiana, by filing complaint, etc.

This act authorizes the bringing of this suit as it was brought in the Marion Superior Court. The question presented is as to whether or not the complaint states facts constituting a cause of action in favor of the plaintiffs against the State.

The theory of the complaint is, and the discussion in appellants' brief is, on the ground that the attorney general of the State had authority by law under the circumstances existing to employ the appellant Jacob B. Julian to perform the services which it is alleged he did afterwards perform, and bind the State to pay for the same, and that the State, having in effect, by an act of the last Legislature, compromised with the claimants, is liable to the appellants for the value of their services, not to exceed ten per cent. of the actual value of the land; that the State could not dispose of the land at a reduced price or for nothing to the detriment of the appellants. It is possibly true if there had a fixed amount accrued to the appellants for services performed by them in the recovery of land owned by the State under a valid contract made by the attorney general, which the attorney general had the right to make, and the State had thereby become indebted to the appellants in a sum certain, for which they had the right to sue the State and recover, the Legislature could not so legislate as to take away the rights of the appellants; but the important question to be determined in this case is, whether or not the appellants have any valid legal or equitable claim against the State.

It is a well-settled doctrine that officers of the State exercise but delegated power, and this is particularly true of the attorney general. His office is created by statute, and he, as

such officer, can only exercise such power as is delegated to him by statute.    A contract made with the attorney general is void unless he is expressly or impliedly authorized by statute to make such contract. *State* v. *Portsmouth Savings Bank,* 106 Ind. 435 ; *Platter* v. *Board, etc.,* 103 Ind. 360, and authorities there cited.

It is also well settled that all who deal with officers exercising statutory powers, and whose authority is limited by statute, are charged with notice of the scope of such officers' authority.    *Honey Creek School Tp.* v. *Barnes,* 119 Ind. 213 ; *Pierce* v. *United States,* and *Dover, etc., Savings Bank* v. *United States,* 19 U. S. (L. C. P. Co. Ed.), p. 169, at bottom (*The Floyd Acceptances,* 7 Wall. 166).

It is therefore only necessary to determine whether the attorney general had authority by virtue of the statutes then in force to make the contract for the employment of the appellant Jacob B. Julian, which it is alleged in the complaint that he did make, and this must be determined by the construction to be placed upon a few sections of the statute.

By section 5671, R. S. 1881, it is provided that " The attorney general shall have such clerks and deputies as the Governor, secretary and auditor of state may deem necessary, provided that not more than two thousand dollars shall be paid out of the treasury, in any one year, for any such purpose—the salary of such clerk or deputy to be paid out of any funds in the treasury not otherwise appropriated, on the certificate of said state officers."

It is evident that the complaint is not framed upon the theory of recovery for the employment as a deputy under this section, and if it was it would not be sufficient to withstand a demurrer.    It is not contended by counsel that such employment and contract was authorized or made in pursuance of this section of the statute, but this section is material to be considered for the reason that it provides for the employment of a deputy attorney general and assistants for the attorney general, to be paid for by the State out of funds in

the State treasury, and it fixes a limit to be paid for such assistants and deputies, and must be considered in construing the other sections.

It is contended by the appellants that sections 5668 and 5670, R. S. 1881, when construed together, authorize such employment by the attorney general. Section 5668 relates wholly to the duties of the attorney general, and the commissions to be received by him for making collections. So much of said section as it is important to consider reads as follows:

" It shall be the further duty of the attorney general to ascertain, from time to time, the amounts paid to any public officer of the State or any county officer or other person, for unclaimed witness' fees, court docket-fees, licenses, money unclaimed in estates or guardianships, fines or forfeitures, or moneys that escheat to the State for want of heirs, or from any other source, when the same is, by any law, required to be paid to the State or to any officer in trust for the State; and in all cases where the officer whose duty it shall be to collect the same shall fail, neglect, or refuse, for twelve months after the cause of action in favor of the State shall have accrued, or shall fail, neglect, or refuse to sue for and proceed to recover any property belonging to or which may escheat to the State, the said attorney general shall institute, or cause to be instituted and prosecuted, all necessary proceedings to compel the payment of or recovery of any such property. For all collections made or property recovered under the provisions of this section, the attorney general shall be allowed a commission of twenty per cent. on the first thousand dollars, ten per cent. on sums not exceeding two thousand dollars, and on all sums exceeding two thousand dollars five per cent."

It is made his duty by other sections of the statute to collect fines and forfeitures on failure of the prosecuting attorneys to collect. It is likewise made his duty to prosecute and defend all suits that may be instituted by or against the

State, the prosecuting and defending of which is not otherwise provided for, when notified; also, to prosecute and defend all criminal or State prosecutions pending in the Supreme Court, and attend to the interest of the State in all suits in which the State may be interested in the Supreme Court.

Section 5670 is as follows: "The attorney general may employ and have such assistants to aid him in the discharge of the duties imposed upon him by the provisions of this act, and pay to them, out of the sums so collected by such person or persons, a sum not exceeding ten per cent. of the sum or sums so collected." As we have seen, there are many duties required of the attorney general by the act of which section 5670 is a part, aside from the collections of money due the State and recovering of property of the State, and it is evident that section 5670 could not apply to the discharge of duties relating to criminal prosecutions or cases in which there could be nothing recovered in favor of the State out of which a commission could be paid, so that the section can not be construed to authorize, or as intended to authorize, the attorney general to employ assistants to aid him in the discharge of all the duties imposed upon him by the provisions of the act. The act imposes upon such officer the duty of collecting various and large sums of money which may be due the State on account of various funds due the State in each county. It imposes upon him the duty of looking after and collecting docket and license fees and unclaimed moneys due the State in all the counties, and in the discharge of such duties he collects and receives money out of which he can retain his own commission and pay the commission to his deputies and assistants who made the collection, and when the whole act is construed together it is evident that authority is only given to the attorney general to appoint assistants to aid him in the discharge of such duties as are connected with the collection of money due the State, and when so collected by such assistants he is authorized to

pay the assistant a sum not exceeding ten per cent. out of the fund so collected, and the attorney general is not authorized to employ attorneys for the prosecution or defending of suits in general or in relation to real estate owned by the State, by which such attorney is entitled to a fee from the State equal to ten per cent. of the value of the land, either to be paid out of the State treasury or when sold by the auditor of state or other officer authorized to make sale of the same, to account to and pay to such attorney an amount equal to ten per cent. of the amount of the sale.

Section 5671 provides for the employment of assistants and deputies for the attorney general, to aid him in his general business, and they are to be paid out of the State treasury; and section 5670 authorizes the appointment of assistants, or deputies, for the collection of funds due the State, and when such funds are collected by such assistants, the fees of such assistants are to be paid out of the money so collected by such assistants.

It was certainly not intended, and the statute can not be construed, to put the State in a position where it could not fix the value at which its lands should be sold ; and if the value fixed at which the land should be sold did not correspond with the views of such attorney, as to its true value, to allow such attorney the privilege of refusing to accept his commission on the basis of the price fixed by the State at which the land should be sold, and sue for his commission, and allege and prove the land of greater value, and recover a commission determinable on the amount he could prove the land to be worth.

Our attention is called to the act passed by the Legislature, and approved March 9, 1889, authorizing the sale of the lands referred to in the complaint, and allowing the appellant, Jacob B. Julian, an amount equal to 12 per cent. on the value of the lands, at the price fixed for the sale of them, for his services.   We take judicial knowledge of the passage of such act.   It is contended by appellants that the part of

the act providing for the allowance is unconstitutional, for various reasons. The constitutionality of the act we need not consider, for the reason that if the act is unconstitutional and void, then it does not even amount to an acknowledgment of the employment of the appellant, and a recognition of any liability on the part of the State to pay for his services ; on the other hand, if it is valid it is a recognition of the services of the appellant for the State to the value of the amount allowed in the act, and is a settlement of the claim by the Legislature. There was no legal liability on the part of the State to the appellant, and he had no right of action, which he could maintain, against the State prior to the passage of the act making the allowance. By recognizing the services rendered, and making an allowance in payment, the Legislature took upon itself the adjustment of the claim, and gave to the claimant no rights except to accept the amount allowed. The claimant must accept the provisions made for him as a whole ; he can not treat the act as a recognition of the liability of the State to pay, and refuse to accept the amount allowed. By the Legislature passing an act adjusting the claim, it took the whole jurisdiction of the matter, and withdrew from the courts any jurisdiction to adjudicate upon the right to recover, or the amount to be recovered. The law authorizing the State to be sued only authorizes suits to be brought in cases where there is a liability on the part of the State to the claimant, which has not been adjusted by the Legislature ; but does not authorize suits where there only exists a moral obligation to pay, as may exist in case of the appellants. In such cases payment is discretionary with the Legislature, and its action is final ; if it makes an allowance, the claimant may accept it or not, as he sees fit, and with this his rights end ; he can not maintain an action against the State for the payment.

The attorney general had no authority to contract with an attorney, as alleged in the complaint, and of this the attorney was bound to take notice, and there was no liability

created on behalf of the State to pay for such services ; and this action can not be maintained for the further reason that the Legislature having adjusted the matter itself, and allowed what it deemed proper for the services rendered, it thereby withdrew from the court any jurisdiction to adjudicate upon the question.

The demurrer was properly sustained to the complaint.

Judgment affirmed, with costs.

