STATE OF INDIANA *v.* ROBERTS

[No. 28,342. Filed January 23, 1948. Rehearing Denied March 30, 1948]

108

*Cleon H. Foust,* Attorney General, and *Connor D. Ross,* Deputy Attorney General, for the Petitioner.

*Victor K. Roberts, pro se; George F. Sammons,* of Kentland, and *Cope J. Hanley,* of Rensselaer, for respondents.

## ORIGINAL ACTION.

YOUNG, J.—This is an original action in this court by the State of Indiana against the respondent Roberts, as Special Judge, and the respondent Nesbit, as surveyor, for a writ of prohibition to stop further proceedings as against the State Highway Commission of Indiana in the drainage project involved and to prohibit them from interfering with or removing the existing structure (a culvert) at the point where the proposed drainage project crosses State Highway No. 41, and to prohibit them from carrying out that part of the order and decree in said proceeding which requires the construction of a new bridge at said point of crossing by and at the cost of the State Highway Commission of Indiana.

At this point we think it proper to say that the surveyor was not a proper party to this action. This court's jurisdiction to issue writs of prohibition is strictly statutory. We issue such writs only to inferior courts for the purpose of confining

them to their respective lawful jurisdictions. § 3-2201, Burns' 1946 Replacement. There is nothing in the statute which permits us to issue a writ to an officer of the court, although the officers of the court who may be expected to act upon the authority of the prohibited action and who have notice of the writ, are bound by it. *State ex rel. Spencer* v. *Criminal Court, Marion Co.* (1938), 214 Ind. 551, 558, 15 N. E. 2d 1020, 16 N. E. 2d 888.

From plaintiff's petition and the returns of respondents, it appears that on June 24, 1944, there was filed in the Circuit Court of Newton County a petition seeking the repair and alteration of an old drain in Washington Township, Newton County.

Our drainage law stipulates the contents of petitions for the initiation of drainage projects. § 27-104, Burns' 1933. It provides that lands which will be affected by the proposed drainage shall be described and that the names of owners thereof, if known, shall be stated.

Under the statute no process is required when the petition is filed, but the petitioners are required to fix a day for docketing the petition and to give the owner or occupant of each tract of land described in the petition notice of the filing of such petition and the day set for docketing same. Such notice may be served by the petitioners or any person acting for them by delivering a copy to the owners or occupants of land affected, and notice by posting and by mail to non-residents is also provided. § 27-106, Burns' 1933.

By § 27-112, Burns' 1933, notice of hearing on the surveyor's report is provided for. This again is not by ordinary legal process but by postal card, mailed to the owners whose names appear in the surveyor's report of assessments, benefits and damages.

In this connection it may also be worth while to consider that under the plan and system set up for the establishment of drains such proceedings are not adversary. They are *ex parte* in form. Essentially they are actions *in rem* against the affected land and jurisdiction over the persons of the owners of such land is not necessary, as where personal judgments are sought. Substituted service is sufficient to give jurisdiction.

In the matter presented to us, the State Highway Commission is named in the petition for the new drain as the owner of Highways 41 and 16. The State Highway Commission was given the notices required by statute and a representative of the State Highway Commission attended the surveyor's hearing. There is no contention by the State that there was any failure in any particular to follow the statutory procedure for the establishment of drains in the matter here involved.

Thereafter such proceedings were had that the surveyor in performance of his duties under the statute made his report to the court, and in said report fixed the damages and benefits caused by the said project, and made it appear that where the proposed improvement was designed to cross Highway 41 the culvert then existing would be destroyed and a new bridge of a size sufficient to give a waterway cross-section of 101 square feet would be necessary. He also made it appear that there would be no repair, underpinning or rebuilding of abutments of the culvert then existing under the old drain inasmuch as the proposed improvement was to be an open ditch and the old drain was of tile construction. It was further made to appear that the route proposed does not call for a cut-off for the purpose of shortening and straightening the old ditch.

There was later a hearing on the surveyor's report and it was ordered and decreed by the court that the report of the surveyor be confirmed and the assessments and benefits reported be approved and that the ditch and drain be established over the route as laid out and described in the surveyor's report, which route it appeared extended over and across Highway 41. And it was further ordered and adjudged by the court that the State Highway Commission construct and pay for the bridge necessary at the point where said ditch crosses said highway. This decree was entered on June 28, 1947, and thereafter, on July 25, 1947, this action was commenced in this court for a writ of prohibition, as first above indicated.

In its petition to us the State alleges that it was not made a party to any of these proceedings and that no notices of any character were ever served upon or furnished to the Attorney General of Indiana.

The primary position of the plaintiff is that the court has no jurisdiction over said Commission or the subject matter of said proceeding as against said Commission and that the decree as to it is void.

If the State Highway Commission were the ordinary owner of affected real estate there would be no question of the jurisdiction of the court. It seems to us that we must reach the same answer in considering the position of the State Highway Commission. It was given by statute complete control over the State highways. It designates the work which is to be done and prepares plans, specifications and estimates for same, § 36-108, Burns' 1933. It lets all contracts, § 36-112, Burns' 1933, and executes same in the name of the State, § 36-114, Burns' 1933. It has access to and power to draw upon and expend all money in the State Highway fund, § 36-109, Burns'

1933. It is authorized to adopt its own seal and is required to use its own seal in the execution of contracts and other documents and papers as the same may be required. § 36-101, Burns' 1933.

While, strictly speaking, the State of Indiana is the owner of state highways, or the easements and rights in the land used for such purpose, the State can act only through agents and the State Highway Commission is the authorized instrumentality of the State in the State Highway matters. For all practical purposes, the State Highway Commission, under the act creating it, is the State of Indiana, so far as the state highways are concerned.

The matter of the establishment, maintenance and control of state highways is for the legislature and, likewise, the matter of the establishment, maintenance and control of drains and ditches is for the legislature. *Chicago, etc., R. Co.* v. *Luddington* (1910), 175 Ind. 35, 38, 91 N. E. 939.

The legislature has placed the matter of state highways in the hands of the State Highway Commission, § 36-107, Burns' 1933, and has conferred jurisdiction over drains and ditches in the courts, § 27-104, Burns' 1933. The establishment and control of highways and the establishment and control of drains and ditches are separate and distinct fields for legislative action, and it cannot be presumed that the legislature intended to give preference to either over the other in its field unless such intent is clearly shown by statute. The statutes on each subject should be considered in *pari materia* and reconciled when possible. With the finely spun web of state highways, the establishment of ditches would be difficult and often impossible if highways could not be crossed. It is true that one section of the highway statute says that high-

ways shall not be torn up or disturbed for any purpose by anybody without the written consent of the chairman of the State Highway Commission. § 36-121, Burns' 1933. This statute has been construed not to vest the chairman of the State Highway Commission with power to forbid or prevent a highway from being torn up or cut through by persons lawfully entitled to do so in construction of a drain under a judgment of a court of competent jurisdiction. *State* v. *Douglas* (1924), 196 Ind. 207, 210, 144 N. E. 548.

The case just cited was an action in the name of the State of Indiana, as plaintiff, seeking to enjoin cutting through a state highway in the construction of a drain under an order of court duly made in a drainage project. In prosecuting this suit the State relied upon the section of the highway statute to which we have just referred to the effect that no highway shall be torn up or otherwise disturbed without the written consent of the chairman of the State Highway Commission. In considering this contention this court said:

"But, as we construe the statute, it was not intended to have any such effect. Ordinarily, the law imposes upon any person who tears up or cuts through a highway the duty to restore it to as good condition as it was before, *the only exceptions being where such person, by contract or the judgment of the court, or otherwise, has acquired a right to cut into or through the highway without restoring it. Nothing in this act indicates a purpose to change or modify the drainage law, or to enact a law giving or taking away the right to construct public ditches under order of court in a proper proceeding for that purpose.* And § 27, as we understand its meaning, does not create nor attempt to create, or empower the State Highway Director to create, any new duties or obligations on the part of persons who cut into or across a highway or tear it up for any purpose; but only gives him the right and imposes on him the duty to see

that all such acts are done in conformity with the law on that subject, to which end, the highway commission may prescribe and he may enforce regulations as to the time and manner of crossing which will cause the least possible interruption to and interference with travel, and may enforce payment of the cost of restoring the highway by persons on whom the law imposes that obligation. *But it does not vest in the State Highway Director or the State Highway Commission power to forbid or prevent a highway being torn up or cut into or through by persons otherwise lawfully entitled to tear it up or to cut into or through it."* (Our italics)

In the case of *Byers* v. *Hoskinson* (1924), 196 Ind. 225, 226, 147 N. E. 810, the same question again was before the court, and this court said:

"The alleged reasons for which a new trial was asked were based on the contention of counsel that the court had no jurisdiction to establish the drain and order it constructed across a state highway without first providing for the construction of a bridge across the ditch which would completely restore the highway, to the approval of the State Highway Commission. That they were in error in this contention was decided a few months ago, and we adhere to that decision. State v. Douglas (1924), ante 207, 144 N. E. 548. . . ."

In the case of *Karr* v. *Board, etc.* (1908), 170 Ind. 571, 580, 85 N. E. 1, it was contended that the drainage statutes gave courts no right to destroy highways or bridges and in discussing this question this court said:

"Counsel for appellee contend that the judgment of the Morgan Circuit Court is open to attack, on the ground that the drainage act cannot be taken to authorize the material injury or destruction of public property in use by the public. Whatever may be the rule as to such public property of a county as a court-house or jail, we are of opinion that it cannot be affirmed as a matter of jurisdiction that it is incompetent for a court to establish

a public drain which would result in the serious injury or destruction of a highway bridge, for so to hold would be to affirm that the existence of such a bridge might afford an insuperable obstacle to the execution of a scheme of drainage of great importance. . . ."

It seems to us from these cases that the petitioner is in error in its contention that the court had no jurisdiction or power in a drainage proceeding to establish a ditch or drain across a highway without the consent or permission of the State Highway Commission. The statutes clearly give the court jurisdiction over the subect matter of proceedings to alter and repair a drain, § 27-120, Burns' 1933. And the cases above cited sensibly, we think, say that the State Highway Commission shall have no power to veto such a project simply because it crosses a state highway.

The Douglas case, *supra,* is pertinent in the case before us for another reason. The only averment in the complaint in the Douglas case, by which any attempt was made to challenge the jurisdiction of the court to order the drain constructed, was one to the effect that the State of Indiana was not made a party nor served with notice of the filing of the petition for drainage or the report of the drainage commissioners, and that no notice thereof was given to the Attorney General. But notwithstanding this failure to make the State a party and failure to give the State or the Attorney General notice, it was held the court had jurisdiction to order the drain constructed across the highway and this court said that it knew of no law requiring that the State or the Highway Commission be made a party to such a proceeding. There was no pertinent law in effect when the drainage here involved was started which was not in effect at the time

of the proceedings in the case of *State* v. *Douglas, supra,* and if there was then no law which provides for making the Highway Commission or the State a party to a drainage proceedings there is no such law now.

However, an earlier decision and opinion by this court had indicated that the political subdivision having ownership or quasi-ownership of an affected highway should be made a party in order that the public interest may be represented, *Karr* v. *Board, etc., supra,* and we think it better practice to name the State Highway Commission in the petition and serve it with the notices required by statute and hereafter to serve copies of papers filed in drainage proceedings involving state highways upon the Attorney General pursuant to Chapter 3 of the Acts of 1945.

We hold, therefore, that the statutes clearly give the courts jurisdiction over the subject matter of proceedings to alter and repair drains, § 27-120, Burns' 1933, and we further hold that under the State Highway Commission statute the State Highway Commission was definitely made the agent and instrumentality of the state in all matters relating to highways and it is proper and sufficient to name it in ditch proceedings involving state highways and to serve the statutory notices on it.

It is contended by the plaintiff herein that there is no right to sue the State without the State's consent, and that if the State or the State Highway Commission, as the instrumentality of the State in all matters relating to state highways, may be named in a drainage petition it is tantamount to making the State a party to such proceedings. We hold that the legislature, by the adoption of the drainage statutes, requiring owners of affected land to be made

parties, gave its consent that the State be brought into drainage proceedings where state highways will be affected by the drainage project proposed. Any other conclusion would mean that the legislature intended either that drains could not cross state highways, which we do not believe, or that the public interest in the highways would be protected by the court without representation. It is much more reasonable to think that the legislature intended that the State, by its Highway Commission, should appear as the owner of the affected highways in order that the public interest in the state highways may be protected and weighed against the public interest in adequate drainage, and consented that the State be made a party to such proceedings in that way.

It is also contended by the plaintiff that the State Highway Commission is without power to sue or be sued, and is without power to represent the State in drainage proceedings. We believe, however, that it was the intention of the legislature that the State Highway Commission be a distinct legal entity with large power and that as an incident in the exercise of its broad power over the State Highway system of Indiana it could be named in ditch proceedings where state highways are involved, and, being a proper party, could and should appear and make clear to the court its position upon controversial questions and appeal if it thinks error has been committed.

It is also contended by the petitioner that the court was without jurisdiction in the drainage matter under consideration because no copy of any petition or other paper was served upon the Attorney General, as required by ch. 3, p. 7, of the Acts of 1945, which provides that whenever any suit or action or petition is filed in any court in this state, in

which the State of Indiana, or any board, commission, agency or officer of the State is a defendant, a copy of such pleading shall be served upon the Attorney General and such proceeding shall not be deemed to commence as to the State, board, commission or agency until there has been such service. This statute was approved and went into effect on February 1, 1945. The drainage proceeding under consideration was begun on June 24, 1944. The statute, therefore, was not in effect at the time this proceeding was started and there was at that time no obligation upon the petitioner in the drainage proceeding to serve a copy of its petition or any other paper upon the Attorney General.

In its petition for a writ of prohibition filed in this court, the petitioner undertakes to show that, taking into account the cost of a new bridge, the damages exceed the benefits and the project should not have been approved. These facts do not go to the power of the court, but only to the wisdom and propriety of its decree. They are not adequate grounds for invoking the extraordinary power of this court to issue writs of prohibition against inferior courts. Our only authority to issue writs of prohibition is statutory and under the statute we may issue such a writ only to confine lower courts to their respective lawful jurisdictions, § 3-2201, Burns' 1946 Replacement. We will not issue writs of prohibition to correct errors of trial courts if they have jurisdiction. Such errors may be corrected only by appeal. *State ex rel. Mock* v. *Whitley Circuit Court* (1937), 212 Ind. 224, 8 N. E. 2d 829; *State ex rel. Williams* v. *Goshorn, Special Judge* (1942), 220 Ind. 369, 372, 43 N. E. 2d 870. If the court had jurisdiction it had jurisdiction to act erroneously and the only remedy would be by appeal.

There remains for our consideration the question of the jurisdiction of the court to order the State High way Commission to build a bridge over the ditch involved where it crosses Highway 41. Whether or not this bridge should be built is exclusively for the determination of the State Highway Commission in the exercise of discretion vested in it by the legislature. The failure to build the bridge would in no manner interfere with the sufficiency of the drain. It would only interfere with the use of the highway, and whether or not any particular highway shall be maintained, and whether or not bridges necessary for its use shall be built, is for the State Highway Commission, and it is not within the power of the court to order the Highway Commission to do something which is in the sole discretion of the Commission, at least unless an abuse of discretion is shown. We have already indicated that the court had a right to order the drain across Highway 41, and to destroy the highway and the existing culvert at the point of crossing. It seems that the establishment of the drain in the manner ordered by the court will in this case make necessary a bridge, if the highway to be crossed is to continue in use, but whether it shall continue in use is a question for the Highway Commission.

Plaintiff contends that the cost of the bridge should be a part of the cost of the drainage project. Bridges on any state highway shall be considered as a part of the highway (§ 36-110, Burns' 1933), and the cost of bridges is paid by taxation upon all taxpayers of the governmental unit responsible for the bridge and not by assessments against a few.

*Rigney, Trustee* v. *Fischer* (1887), 113 Ind. 313, 314, 315, 15 N. E. 594, presents almost exactly the same

question that is before us. In it the following language was used:

"Neither the act of 1885, supra, nor any other statute, makes it the duty of the appellee, as the drainage commissioner, under the circumstances of this case, to build bridges upon public highways crossed by drains constructed by him, nor does that duty result from his office. It was his duty to construct the drain as ordered by the court, but we know of no authority which he has to construct the bridge over the drain. He has no fund which he can use for that purpose. Assessments were made upon lands benefited by the drain for the purpose of raising a fund with which to construct it, and the statute expressly provides how that fund shall be applied and expended. The law provides for the construction of bridges upon public highways by funds raised by taxation upon all the taxpayers of the municipality, and not by assessments of a few. Appellee, as the drainage commissioner, has no fund except that obtained by an assessment upon a limited number and assessed for the specific purpose of constructing the drain.

"The bridge is not shown to be or to have been regarded by the drainage commissioners or by the court as a necessary part of the drain. To compel appellee, as the drainage commissioner, to use the assessments made for the purpose of constructing the drain in the erection of the bridge over the drain would not only turn those assessments from the purpose for which they were made, but would also impose upon a few land-owners a burden which the law contemplates shall be borne by the taxpayers at large."

This was said by this court a long time ago, but it has never been questioned and we have found no statute which alters the rule laid down.

It is therefore ordered that the temporary writ of prohibition issued herein be and it is hereby dissolved; that a permanent writ, except as to the portion of the decree ordering the State Highway Commission to

build a bridge, be denied, and that respondents be and they are hereby prohibited from enforcing that part of the decree in the matter involved, which orders the State Highway Commission to build a bridge on Highway 41, over the ditch or drain, which has been established.

Emmert, C. J., and Gilkison, J., dissent.

Note.—Reported in 76 N. E. 2d 832.

## DISSENTING OPINION

EMMERT, C. J.—The State of Indiana as a sovereign brings this original action in this court against the Newton Circuit Court and the special judge thereof to prohibit the court from enforcing its judgment, entered in a proceeding for the repair of an old drain in Newton County, which ordered the ditch and drain established "over the route as laid out and described in the Surveyor's report as amended, which road extends over and across United States Highway No. 41," and which further adjudged that the "Highway Commission of Indiana construct and pay for the bridge over United States and States Highway No. 41 where said ditch crosses said highway."

Relator's petition alleged United States Highway No. 41 extends from a point on the Illinois-Indiana state line near Chicago to a point on the highway near Evansville, and connected at said respective points with adjoining highways over Illinois and Kentucky; that it was constructed in cooperation with the federal government under the Federal-Aid Acts and said funds were expended in the construction and improvement thereof; and "that the United States mail is carried over said highway, that several other important, through highways make connections with said U. S. Highway

No. 41, and that said highway is one of the most important interstate highways of the United States and of the highway system of Indiana." The relator's petition further alleges there now exists a permanent concrete culvert for the passageway for the carrying of water six (6) feet in width and six (6) feet in height where the existing ditch crosses the highway; but that the Surveyor's Report approved by the court provided for the removal and destruction of the existing culvert and the construction of a new channel through the highway at that point five (5) feet in width at the bottom and twenty-five (25) feet wide at the top and eight (8) feet deep, which will necessitate a new bridge at the point of crossing which will cost from $20,000 to $25,000. The State of Indiana was not made a party to the proceedings at any stage, nor was any service of process or notice of any kind ever made on the Governor or the Attorney General of Indiana[1]. The petition to repair alleged as an owner the "State Highway Commission" and its land was described as "State & Federal Highway No. 41, in Sec. 22-28-9." The assessment sheet alleged as an owner "Indiana State Highways," and the description of land was alleged as "benefit to the Right of ways on Road No. 16 & No. 41."

It should be noted that the petition does not in positive terms allege that the destruction of the present culvert and the cutting of the new channel will constitute an unlawful and unreasonable burden on interstate commerce, or that it will materially interfere with national defense, or that the transportation of the United States mail will be unreasonably or unlawfully

---

[1] Since 1796, the rule in the Federal Courts has been that process shall be served upon the Governor and Attorney General of a state when it is a party. *Grayson* v. *Virginia* (1796), 3 Dallas 320, 1 L. Ed. 619.

"hampered, interfered with, and delayed." Nor does the majority opinion in its reasoning consider these issues. See *United States* v. *Babcock* (1925), 6 F. 2d 160; *Babcock* v. *United States* (1925), 9 F. 2d 905.

However, the majority opinion does constitute a radical departure from the well considered cases defining and limiting the authority of public officers and servants of the state to that which may be granted by the Constitution and by the statutes enacted pursuant thereto, and it ignores the constitutional limitations against action against the State of Indiana. For these reasons I feel compelled to dissent.

"The right to enter upon another's land and dig ditches for drainage is unknown to the common law. The right is purely statutory." *Kaufman* v. *Alexander* (1909), 173 Ind. 136, 139, 88 N. E. 502. "Drainage proceedings are wholly statutory, and questions as to the authority of the court in constructing a new drain, or changing, repairing, or extending a drain already established, must be solved by a reference to the statute." *Kilty* v. *Michael* (1921), 190 Ind. 374, 382, 130 N. E. 531. See also *Taylor* v. *Strayer* (1906), 167 Ind. 23, 78 N. E. 236. The drainage act provides that the proceeding may be brought either before the board of county commissioners, or in a circuit or superior court. The board of county commissioners is a statutory board, and in common with all other statutory boards or officers, only has the powers granted by the statute. The act can not mean one thing when a proceeding is brought before a board of county commissioners, and something else with larger authority when brought in a circuit or superior court, nor does the act make it lawful for a court to do something which would be unlawful for a board of county commissioners to order. The jurisdiction of the court in a ditch proceeding is

limited by the statute creating the right unknown to common law.

The proceedings to repair this drain were filed June 24, 1944, and so were governed by the provisions of Chapter 264 of the 1933 Acts as amended by chapter 225 of the 1935 Acts and chapter 165 of the 1941 Acts.

If it be conceded that ditch proceedings are *in rem* they are not *ex parte* in any sense of the term. "Proceedings are ex parte when relief is granted without an opportunity for the person against whom the relief is sought to be heard." *Restatement, Torts* § 674, p. 445.

Under the due process clause of the Fourteenth Amendment of the Federal Constitution, neither a court nor a board of county commissioners may take private property in drainage proceedings without reasonable notice to the person injuriously affected.

> "In the above case [*Chesebro* v. *Los Angeles Co. Flood Control Dist.* (1939), 306 U. S. 459, 83 L. Ed. 921] it is also held that where the district was not directly created by the Legislature, and there has not been a determination that certain property will be benefited by local improvements, the owners are entitled to notice under the 'due process of law' clause of the Fourteenth Amendment, and further that they are entitled to be heard by some officer or tribunal empowered by the state to hear them, and to consider and decide whether or not their lands will be specially benefited. Citing *Fallbrook Irrigation District* v. *Bradley* (1896), 164 U. S. 112, 167, 41 L. Ed. 369, 391." *Board of Commissioners* v. *Falk* (1943), 221 Ind. 376, 47 N. E. 2d 320.

Notice is necessary to give jurisdiction to the court in a ditch petition. *Higgins* v. *Swygman* (1923), 194 Ind. 1, 6, 141 N. E. 788. Ditch proceedings are adversary in character. *Honnold* v. *Endicott* (1908), 170 Ind. 16, 19, 83 N. E. 502.

An assessment against the land of one who is not named in the ditch proceeding, and who has no notice

thereof, is void. *Righter* v. *Keaton* (1908), 170 Ind. 461, 84 N. E. 977; *Uhl* v. *Moorhous, Treasurer of White County* (1894), 137 Ind. 445, 37 N. E. 366; *McCollum* v. *Uhl* (1891), 128 Ind. 304, 27 N. E. 152, 27 N. E. 725; *Prezinger* v. *Harness* (1888), 114 Ind. 491, 16 N. E. 495; *Davis, Treasurer* v. *The Lake Shore and Michigan Southern Railway Co.* (1888), 114 Ind. 364, 16 N. E. 639; *Brosemer* v. *Kelsey* (1886), 106 Ind. 504, 7 N. E. 569; *Jones* v. *Cardwell* (1884), 98 Ind. 331; *Vizzard* v. *Taylor, Treasurer* (1884), 97 Ind. 90; *Brett* v. *Pretorious* (1911), 48 Ind. App. 527, 96 N. E. 211.

Under section 20 of the Act, a proceeding for the repair of a ditch or drain has the same requirements as to notice and jurisdiction as an original proceeding for the establishment of a drain.[2] Section 4 of Chapter 264 of the 1933 Acts requires that the petition "shall give the names of the owners thereof, if known, or upon diligent inquiry can be ascertained, and if unknown, shall so state. If the name of the owner is unknown and can not be ascertained on diligent inquiry, it shall be sufficient to describe such land as belonging to the person who appears to be the owner by the last tax duplicate or record of transfers kept by the auditor of the county in which such land is situated." It would be a gross absurdity to hold that private landowners must have notice, and the legislature re-

---

[2] "The form and contents of such petition and other provisions thereof, so far as applicable, shall conform and be similar to the petition provided in this act relative to original petitions for construction of drains; as well as the provisions of this act relative to notice of docketing thereof, objections thereto, and the reference of such petition to the surveyor and viewers, the findings of the viewers, the filing of the surveyor's report, and other proceedings, shall, so far as applicable, conform and apply to the proceedings in this section specified for the repair, change or extension of any such drain." Acts 1933, ch. 264, § 20, p. 1183, § 27-120 Burns' 1933.

quired notice to the political subdivisions of the state, yet the state itself was not entitled to notice before it might be ordered to spend thousands of dollars for the benefit of private landowners even though the drain be of public utility.

Under § 36-118 Burns' 1933 (Acts 1933, ch. 18, § 18, p. 67), the State Highway Commission takes title not in its own name, but in the name of the State of Indiana. Even in the absence of this statutory provision, the ownership of the highway easement is in the state at large. *Lamphier* v. *Karch* (1915), 59 Ind. App. 661, 109 N. E. 938. This ownership is recognized by the drainage act, which in § 9 (§ 27-109 Burns' 1933), provides in part, "If, by reason of a cut-off, for the purpose of shortening and straightening, *it is necessary for the state*, county, township or railroad to construct new bridges, the state, county, township or railroad affected, shall bear one-half of the cost and the remainder shall be borne by the improvement." (Italics added.) The petitioners in this proceeding are presumed to have known what the law was, and they are bound by it whether they knew it or not. Section 6 of the Drainage Act has specific provisions that notice of the petition shall be given to the political subdivision of the state. But there is no statutory provision authorizing the state to receive notice by service upon the Indiana State Highway Commission, nor is there any provision that the state shall be served in any manner whatever except as to swamp lands.

It is true that the court in *State* v. *Douglas* (1925), 196 Ind. 207, 209, 144 N. E. 548, said that it did not "know of any law which provides . . . for making the highway commission or the state a party to such a proceeding." This decision was subsequently followed in *Byers* v. *Hoskinson* (1925), 196 Ind. 225,

227, 147 N. E. 810. Both of these cases proceed upon an erroneous conception as to the liability of the state, and totally ignore the express constitutional mandate limiting actions against the state.

Section 24 of Article 4 of the Constitution of Indiana is binding upon the Legislature as well as upon the courts. It provides: "Provision may be made, by general law, for bringing suit against the State, as to all liabilities originating after the adoption of this Constitution; but no special act authorizing such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed." This provision sets the standard which must be followed, and there are no implied exceptions.

". . . It is conceded, of course, that the legislative power is limited only by the constitutional inhibitions. State constitutions are intended to restrain legislative power rather than grant it, and unless some constitutional restriction can be designated, a legislative act must be held authoritative. *McComas* v. *Krug, supra.* But the inhibition may be either express or implied. In construing constitutional provisions, a rule of general acceptance is 'that which is expressed makes that which is silent to cease.' *Gougar* v. *Timberlake* (1897), 148 Ind. 38, 48, 46 N. E. 339, 37 L. R. A. 644, 62 Am. St. 487. When the constitution declares how a right may be exercised, it impliedly prohibits its exercise in some other way. *Morris* v. *Powell* (1890), 125 Ind. 281, 25 N. E. 221, 9 L. R. A. 326; *Denny* v. *State, ex rel., supra.* The rule is expressed by Cooley as follows: 'When the constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition, or to extend the penalty to other cases.' Cooley, Const. Lim. (7th ed.) 64. . . ." *State* v. *Patterson* (1914), 181 Ind. 660, 664, 665, 105 N. E. 228.

The Legislature has provided by general act for bringing actions against the state from liabilities arising out of contract either express or implied. Section 4-1501, *et seq.* Burns' 1946 Repl. (Acts of 1889, ch. 128.) A quiet title suit may be instituted against the state. Section 2-229 Burns' 1946 Repl. (Acts 1933, ch. 225, § 1, p. 1137). But these statutes make specific provisions as to how jurisdiction shall be acquired, and upon whom notice shall be served. In the ditch law itself there is a general provision for extending drains and ditches across the swamp lands of the state, but service is to be had upon the Auditor of State, § 27-402 Burns' 1933, who has the right to remonstrate, § 27-127 Burns' 1933 (Supp.).

Nor should we assume that the Legislature intended to deprive the state of its day in court any more than it has a constitutional right to deprive a private individual of his day in court. "Suit" in § 24 of Article 4 of the Constitution means an adversary proceedings, which in turn requires notice.

The State of Indiana can not be sued without its consent, *State ex rel. Fry* v. *Superior Court of Lake County* (1933), 205 Ind. 355, 186 N. E. 310; *Spring Valley Coal Co.* v. *State* (1926), 198 Ind. 620, 154 N. E. 380; *State* v. *Mutual Life Ins. Co.* (1910), 175 Ind. 59, 93 N. E. 213. Nor may the objects of an unauthorized suit be accomplished by indirection. *Shoemaker, Aud. of State* v. *The Board of Comm'rs of Grant Co. and Another* (1871), 36 Ind. 175. When the state consents to suit it must be by a general act under the Constitution. No amount of judicial legislation or wishful thinking, as was indulged in by the court in *State* v. *Douglas* (1925), 196 Ind. 207, 209, 144 N. E. 548, and *Byers* v. *Hoskinson* (1925), 196 Ind. 225, 227, 147 N. E. 810, can abrogate these constitutional require-

ments. Both of these cases in the field of public law are as strange as wild deeds in a lawful and legitimate chain of title, and they should be overruled. The preposterous result in the Douglas case of unreasonable burden on interstate commerce was noted by the court in *United States* v. *Babcock* (1925), 6 F. 2d 160, where the injunction against the ditch across the Lincoln Highway was modified to remain in force until satisfactory arrangements were effected to construct the permanent bridge.

It is conceded in this case no summons or notice of any kind was ever served upon the Attorney General of Indiana. Section 4 of Chapter 71 of the 1889 Acts requires that, "Such Attorney General shall prosecute and defend all suits that may be instituted by or against the State of Indiana, the prosecution and defense of which is not otherwise provided for by law, whenever he shall have been given ten days' notice of the pendency thereof by the Clerk of the Court in which such suits are pending, and whenever required by the Governor or a majority of the officers of State, in writing, to be furnished him within a reasonable time; . . . ." Section 6 of Chapter 109 of the 1941 Acts, § 49-1924 Burns' 1933 (Supp.), adopted, continued and transferred to and conferred upon the Attorney General all rights, powers and duties provided by Chapter 71 of the 1889 Acts. Under these provisions notice must be served upon the Attorney General. See *Smith* v. *Smith* (1915), 60 Ind. App. 263, 110 N. E. 558. The provisions of Chapter 3 of the 1945 Acts, § 49-1937 Burns' 1933 (Supp.), requiring the service of copies of complaints, petitions, briefs or pleadings upon the Attorney General do not dispense with the service of process upon the Attorney General, but are in addition to the requirements of service of process. § 49-1939

Burns' 1933 (Supp.), Acts 1945, ch. 3, § 3. Some-
one must represent the state and its interests. The
public in general is not to be left helpless without
counsel in court. The State of Indiana was the land-
owner of the right of way constituting United States
Highway No. 41, and under the statutes the Attorney
General was authorized to represent the state, and
notice to obtain jurisdiction should have been served
upon him.

There has not been any contention in this original
action nor is it possible to point out any provision of
the statutes either concerning ditches and drains or
the Indiana State Highway Commission that there is
any statutory provision authorizing or empowering the
Indiana State Highway Commission to represent the
interests of the state in a drainage proceeding, nor
does it arise by necessary implication, especially in
view of the fact that the Attorney General under the
statutes is the one to represent the interests of the
state. Through a long line of consistent authorities
from 1852 down to the present, this court has repeat-
edly held that statutory officers can exercise no author-
ity except that granted by the statute. In *Hamilton* v.
*The State* (1852), 3 Ind. 452, 457, this court said:

> ". . . The state board [state board of equal-
> ization], like the county and district boards, is a
> mere creature of the statute, and can exercise no
> authority but such as the statute confers. . . ."

Numerous cases since that time have recognized this
principle. *State Board of Tax Comm.* v. *McDaniel*
(1928), 199 Ind. 708, 160 N. E. 347; *Hull* v. *Board, etc.*
(1924), 195 Ind. 150, 143 N. E. 589; *Ransbottom* v.
*State, ex rel.* (1912), 178 Ind. 80, 96 N. E. 762, 98
N. E. 706; *Hord* v. *State* (1907), 167 Ind. 622, 79
N. E. 916; *Julian* v. *The State* (1895), 140 Ind. 581,

39 N. E. 923; *Julian* v. *The State* (1890), 122 Ind. 68, 23 N. E. 690; *The State* v. *The Portsmouth Savings Bank* (1886), 106 Ind. 435, 7 N. E. 379; *McCaslin* v. *The State, ex rel. Auditor of State* (1885), 99 Ind. 428; *State ex rel.* v. *Clamme* (1922), 80 Ind. App. 147, 134 N. E. 676.

This rule of public law limiting the authority of statutory officers was applied by the United States Supreme Court in construing the provisions of § 24, Article 4 of the Indiana Constitution, *supra*. Although the construction by the United States Supreme Court on the Indiana Constitution is not conclusive on this court, yet its opinions are most persuasive, and for that reason its language is particularly valuable. In *Ford Motor Company* v. *Department of Treasury* (1945), 323 U. S. 459, 468, 65 S. Ct. 347, 352, 89 L. Ed. 389, 396, the court said:

> "We interpret this provision as indicating a policy prohibiting state consent to suit in one particular case in the absence of a general consent to suit in all similar causes of action. Since the state legislature may waive state immunity only by general law, it is not to be presumed in the absence of clear language to the contrary, that they conferred on administrative or executive officers discretionary power to grant or withhold consent in individual cases. Nor do we think that any of the general or special powers conferred by statute on the Indiana attorney general to appear and defend actions brought against the state or its officials can be deemed to confer on that officer power to consent to suit against the state in courts when the state has not consented to be sued. State court decisions construe strictly the statutory powers conferred on the Indiana state attorney general and hold that he exercises only those powers 'delegated' to him by statute and does not possess the powers of the attorney general at 'common law.' . . ."

Silence in the statute never confers authority. It was well stated by Judge Fansler in *Chicago & E. I. R. Co.* v. *Public Service Comm.* (1943), 221 Ind. 592, 594, 49 N. E. 2d 341, concerning the authority of the Public Service Commission:

> "The Public Service Commission derives its power and authority solely from the statute, and unless a grant of power and authority can be found in the statute it must be concluded that there is none."

In *State ex rel.* v. *Sloan* (1926), 197 Ind. 556, 151 N. E. 418, it was held that a director of the department of conservation, being a statutory officer of limited authority, had no right to intervene in a drainage proceeding since the statute was silent as to that authority. This is a wholesome and salutory principle of public law. If mere silence in a statute gave consent to a public servant to act as his discretion might dictate, our public servants, whether officers or employees, would soon become our masters, and we would have a "government of men and not of laws."

"Public office is a public trust." Those who deal with a trustee of a private trust and are charged with notice of his authorities under the trust instrument, are not protected against action by the beneficiaries for a breach of the trust when the trustee acts beyond the authority of the instrument and the law of trusts. And persons who deal with the state must take notice of the Constitution, statutes and opinions of our courts of last resort which limit the authority of the officer or employee of the state when he purports to act for the state.

Nor does any statutory officer have authority to waive the rights of the state, nor can the state be

estopped by such action, nor may laches be applied against the state in acting in its governmental capacity.

> ". . . When the right to do a thing depends upon legislative authority, and the Legislature has failed to authorize it, or has forbidden it, no amount of acquiescence, or consent, or approval by the doing of it by a ministerial officer, can create a right to do the thing which is unauthorized or forbidden. The administrative officers of the state, as well as the appellee, were bound by the statute. The insurance department had no power to authorize or acquiesce in the issuance of policies unauthorized or forbidden by the statute. An estoppel against the state cannot arise out of the unauthorized acts of state officers. *Platter* v. *Board of Com'rs* (1885), 103 Ind. 360, 381, 2 N. E. 544, 556, 557; *Sandy* v. *Board of Com'rs* (1909), 171 Ind. 674, 677, 87 N. E. 131, 132; *Ness* v. *Board of Com'rs., etc., et al.* (1912), 178 Ind. 221, 232, 98 N. E. 33, 1002; 21 C. J. § 193, p. 1191; 19 American Jurisprudence, § 166, p. 818." *Department of Ins.* v. *Church Members Relief Assn.* (1940), 217 Ind. 58, 60, 26 N. E. 2d 51, 52, 128 A. L. R. 635.

Any suggestion that any estoppel or waiver by reason of the action of any employee of the State Highway Commission is particularly unfortunate. The state is a representative of all the people in their collective capacity. The rights of all the people are too important to be prejudiced by unauthorized acts of employees. If laches, waiver or estoppel did apply against the public, a dishonest, incompetent or negligent public official could wreck the interests of the public. Had this principle of law not been true, or if waiver or estoppel had been applied against the federal government in the Teapot Dome Cases, the ultra vires lease would have protected the pipe line company without knowleldge of the fraud. *Mammoth Oil Co.* v. *United States* (1927), 275 U. S. 13, 72 L. Ed. 137, 48 S. Ct. 1.

There never was any jurisdiction acquired over the State of Indiana, and for this reason the alternate writ of prohibition should have been made permanent. *State ex rel. Wadsworth* v. *Mead* (1947), 225 Ind. 123, 73 N. E. 2d 53. It is not the function of this court by judicial legislation to rewrite the ditch statutes or the state highway acts. That is the function of the Legislature under the Constitution.

Gilkison, J. concurs in this opinion.

NOTE.—Reported in 78 N. E. 2d 440.

ON PETITION FOR REHEARING

YOUNG, J.—Our attention is called to the fact that in our original opinion in this case we stated that statutory ditch proceedings are ex parte and not adversary in character. This statement is too broad. Such proceedings are not initiated by one person or group of persons against another person or group of persons as is usually the case in adversary proceedings, but others whose lands are affected are required by the statute to be named in the petition and they have the right to oppose the action sought, and we have held such proceedings to be adversary in character. *Honnold* v. *Endicott* (1908), 170 Ind. 16, 19, 83 N. E. 502.

Whether the proceeding was adversary or ex parte makes no difference in the conclusion we reach in the original opinion. The petition complied with the statute and named those whose land was affected and notice as prescribed by statute was given.

Emmert, C. J., and Gilkison, J., dissent.

NOTE.—Reported in 78 N. E. 2d 446.

## DISSENT ON PETITION FOR REHEARING

EMMERT, C. J.—The State of Indiana never had its day in court in the ditch proceedings, nor did it ever have an opportunity for its day in court. This is a clear violation of § 24 of Article 4 of the Constitution of Indiana. This court has no authority to enact statutes, nor does it have any power to amend or repeal the Constitution of Indiana. Never at any time has there been any citation to any section or provision of the highway acts granting authority to the Indiana State Highway Commission to represent the State as a defendant in this proceeding. The statutes do not provide that the Commission may sue and be sued. The Attorney General represents the State as its counsel. When lands for highways are condemned for a part of the state highway system, the Commission presents its resolution of necessity to the Attorney General, who then brings the condemnation action "in the name of the state of Indiana in the proper court. . . ." § 36-118 Burns' 1933 (Acts 1933, ch. 18, § 18, p. 67). The Commission is not a party plaintiff nor the real party in interest. If the Legislature had intended the Commission to be a plaintiff or defendant it would have said so. In the total absence of statutory provision the Commission cannot be a party defendant. There is nothing in the highway acts which even faintly suggests that the Legislature repealed the statutory requirements concerning service of "notice" on the Attorney General. The Petition for Rehearing should have been granted.

Gilkison, J. concurs in this opinion.

NOTE.—Reported in 78 N. E. 2d 446.