## LAMPHIER *v.* KARCH ET AL.

[No. 8,649.　Filed October 27, 1915.]

1. BRIDGES.—*Injuries from Defects.*—*Liability of Officers.*—Considered in the light of existing statutory provisions and declared rules of law relative to the maintenance and repair of highways and bridges, any obligation resting on a township trustee and road supervisor to repair a bridge is in the nature of a duty owing to the State or public at large, rather than to individuals distributively, and such officials are not liable in their personal capacity in an action to recover damages for injury to a horse resulting from a mere failure to repair a bridge.　pp. 662, 663, 665, 666.

2. HIGHWAYS.—*Officers.*—*Duties.*—Under the provisions of §7763 Burns 1908, Acts 1907 p. 371, relating to the duties of a road supervisor the township trustee is the superior officer and the supervisor must carry out his orders with reference to highways when specifically given.　p. 663.

3. HIGHWAYS.—*Duty of Supervisor.*—*Mandamus.*—The duty of a supervisor to keep highways in good repair is a public duty, imperative and not discretionary, and he may be compelled by mandate to perform such duty.　p. 663.

4. BRIDGES.—*Highways.*—*Title of State and Local Subdivisions.*—*Repairs.*—Public highways are established and opened, and bridges as a part thereof are built, pursuant to legislative authority, and, in the absence of statutory provision to the contrary, the ownership of such public ways is in the State at large rather than in the local subdivisions; hence the duty of making repairs, though discharged through proper boards and officers of the local subdivisions, rests fundamentally on the State, and such agencies in the discharge of such duty are in fact the agencies of the State. p. 665.

5. BRIDGES.—*Duty to Repair.*—*Official Discretion.*—While the duty to repair bridges is in a sense absolute, yet in the very nature of the case there is room for the exercise of official discretion as to the character and extent of the repairs to be made, and the time when they should be made, etc., all of which must of necessity depend on the importance of the bridge when measured by the frequency and nature of the use to which it is subjected.　p. 666.

From Jasper Circuit Court; *Charles W. Hanley,* Judge.

Action by George Lamphier against Fred Karch and another.　From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*John A. Dunlap* and *E. M. LaRue,* for appellant.
*W. H. Parkinson* and *Abraham Halleck,* for appellees.

CALDWELL, J.—Appellant's horse, while being led by him along a public highway of road district No. 2 in Walker Township, Jasper County, stepped into a hole in 1. the floor of a bridge that spanned a ditch crossing the highway, and was injured. Appellee Karch at the time was trustee of the township, and appellee Brown was supervisor of the road district. Appellant brought this action against appellees as individuals to recover damages on account of injuries to the horse. The action is predicated on the alleged negligent failure of appellees as such officials to keep the bridge in repair. The demurrer of each appellee to the complaint was sustained, and judgment rendered against appellant for failure to plead over. This appeal presents the single question of whether a township trustee or a road supervisor, as an individual, is liable to respond in damages to any one who suffers an injury in his person or property by reason of the failure of such official to keep in repair a bridge which is on the line and a part of a public highway within his jurisdiction.

Appellant states his proposition as follows: "Appellant does seek to charge the appellees with a personal liability for negligent failure to perform duties required of them in their official capacity as trustee and road supervisor. He is not attempting to charge the township with any liability." No question of malfeasance or misfeasance is involved. On the question presented here, there is so much discord among the decisions of courts of appeal of the various jurisdictions that to harmonize them is impossible. See cases collected in notes to the following: *Tholkes* v. *Decock* (1914), 52 L. R. A. (N. S.) 142; *Bates* v. *Horner* (1893), 22 L. R. A. 824; *Worden.* v. *Witt* (1895), 95 Am. St. 70. We proceed to determine the matter in the light of our own statutes. Statutory provisions to the following

effect were in force at the time of the transaction involved here: Any person who has official supervision of the roads in any district, and who fails to keep the ways and bridges in such district in as good repair as the available means will enable him to do is liable to a fine on conviction. §2435 Burns 1908, Acts 1905 p. 584, §529. The road supervisor who fails to use due diligence in keeping the highways of his district in good repair, under the regulations prescribed by statute, is liable to a penalty recoverable for the benefit of the district. §7784 Burns 1908, Acts 1905 p. 521, §114. He may use timber standing within the limits of a highway for the purpose of repairing such highway or any bridge thereon. §7777 Burns 1908, Acts 1905 p. 521, §108. "Such supervisor * * * shall carry into effect all orders of the trustee of the township in which the road district is situated, touching the highways and bridges therein, and keep the same in good repair. * * * Such supervisors shall have charge of and work and keep in good repair the roads of their respective districts. They shall be subject to the control and direction of the township trustee."

2: §7763 Burns 1908, Acts 1907 p. 371. The trustee is the superior officer, and the supervisor must carry out his orders when specifically given. *State, ex rel.*
3. v. *Clifton* (1901), 157 Ind. 581, 62 N. E. 271. The duty of a supervisor to keep highways in good repair is a public duty imperative and not discretionary, and he may be compelled by mandate to perform such duty. *State, ex rel.* v. *Kamman* (1898), 151 Ind. 407, 51 N. E. 483. The township advisory board is authorized to levy a road
1. tax on an estimate made by the trustee, and the trustee with the consent of the advisory board may levy an additional road tax to be expended for the construction and repair of bridges and for other road purposes. §7780 Burns 1908, Acts 1905 p. 521, §110. The trustee controls the expenditure of the funds so arising, and he may pay the same out, as he may deem necessary on

the order of road supervisors for work done by them under his direction. §7781 Burns 1908, Acts 1905 p. 521, §111. The trustee may let the contract for the improvement or repair of highways and bridges to the lowest responsible bidder. §7782 Burns 1908, Acts 1905 p. 521, §112. If the township trustee shall notify the board of county commissioners of the necessity of locating or repairing any bridge or culvert in his township, the commissioners, if they deem that public convenience requires the work to be done, are required to make surveys and estimates and provide for doing the work; but if the board shall not deem the work to be of sufficient importance to justify an appropriation from the county treasury, the trustee may appropriate any part of the road fund to that end if he believes it expedient. §7778 Burns 1908, Acts 1905 p. 521, §109. Whenever in the opinion of the board of commissioners, public convenience requires that a bridge be repaired or built, the board is required to direct that the work be done pursuant to plans, etc. If the board believes the work to exceed the ability of the road district by the application of its ordinary road work and tax, the commissioners may use any appropriation from the county treasury to that end. §7687 Burns 1908, Acts 1907 p. 374. "The board of commissioners of every county shall cause all bridges therein to be kept in repair." §7691 Burns 1908, Acts 1905 p. 521, §43. "That in addition to the duties now conferred on them by law in respect to the care of highways, it shall be the duty of the board of commissioners, township trustees, road superintendents and road supervisors to keep in repair and in passable condition all highways in their respective districts or jurisdictions along or on which United States free delivery mail routes have been or may hereafter be established and maintained * * *. In making such repairs the board may repair bridges or culverts * * *." §7779 Burns 1908, Acts 1907 p. 208. There is no statute

in this State rendering a township trustee or a road supervisor personally liable for neglecting or failing to repair highways or bridges.

Public highways are established and opened, and bridges as a part thereof are built pursuant to legislative authority. In the absence of statutory provision to the contrary, the ownership of such public ways is in the State at large rather than in some local subdivision. *Karr* v. *Board, etc.* (1908), 170 Ind. 571, 575, 85 N. E. 1; *Cummins* v. *Pence* (1910), 174 Ind. 115, 119, 91 N. E. 529. Since public highways and bridges as a part thereof are owned by the State, it would seem apparent that fundamentally the duty to keep them in repair rests on the State. The State, however, as appears from the foregoing digest of the statutes, has delegated that duty to certain political or governmental subdivisions, as counties, townships, etc. These subdivisions, however, discharge such duties through certain agencies, as boards of county commissioners, township trustees, road supervisors and other officials. The State, through its legislative department provides for selecting these agencies, prescribes their respective duties, and fixes penalties for failure to perform such duties. As the duty to repair public ways rests fundamentally upon the State, it appears that these agencies are in fact agencies of the State created by it for the purpose among others of performing such duty, and through which the State does perform it. Such agencies in repairing public highways and bridges are therefore doing the State's work. Thus, there are certain statutes by virtue of which local officials may appropriate private property for the purpose of road and bridge repair, as §§7775, 7777 Burns 1908, Acts 1905 p. 521, §§106, 108. Only sovereign power may take private property for a public use. The exercise of the power granted by such statutes is justified on the theory that the taking is by the State for pur-

poses of the State, through agencies created by it. *Dronberger* v. *Reid* (1859), 11 Ind. 420; *Jeffersonville, etc., R. Co.* v. *Daugherty* (1872), 40 Ind. 33.

While the duty to repair bridges is in a sense absolute, yet in the very nature of the case there is room for the exercise of official discretion. As to whether a given bridge should be established or repaired, and the state of repair in which it should be kept, and the order in which repairs should be made upon the various bridges within a particular jurisdiction, must of necessity depend on the importance of the bridge when measured by the frequency and nature of the use to which it is subjected. Moreover, from a consideration of the statutes cited herein, it appears that in so far as concerns road supervisors, township trustees and boards of commissioners, the delegated duty to repair bridges is in a sense distributed among them with no duty resting upon either class of officials sufficiently comprehensive to include all cases of proposed repair. Thus, a road supervisor is subject to the control and direction of the trustee, and the duty delegated to each of these officers is limited by the existence of available means. The fact that in a given case or that respecting a particular work of repair, such limitation becomes effective, invokes the performance of the duty delegated to boards of county commissioners by the use of county funds in repairing bridges. As said by the Supreme Court in *Board, etc.* v. *Allman* (1895), 142 Ind. 573, 585, 42 N. E. 206, 39 L. R. A. 58, "the board of commissioners can only cause bridges to be repaired by an appropriation of county funds to pay the expense, when the road district is not able, by its road work and tax, to make the same, and the commissioners deem the bridge of sufficient importance to appropriate the county funds for that purpose, and in such case the expense must be borne by the road district, so far as it is able, and the residue by the county."

It thus appears that road supervisors and township trustees in prosecuting the work of repairing bridges act as agents of the State, rather than as agents of individuals, and that the delegated duty to do such work is to an extent distributed among them and other agencies. It is a well-established principle that "no man can have any ground for a private action until some duty owing to him, has been neglected; and if the officer owed him no duty, no foundation can exist upon which to support an action." Cooley, Torts (3d ed.) 756. "The rule of official responsibility then appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. Cooley, Torts (3d ed.) 757. See, also, *State, ex rel.* v. *Harris* (1883), 89 Ind. 363, 46 Am. Rep. 169; *Moss* v. *Cummings* (1880), 44 Mich. 359, 6 N. W. 843. "The failure of a public official to perform a public duty can constitute an individual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its nonperformance." *Gage* v. *Springer* (1904), 211 Ill. 200, 71 N. E. 860, 103 Am. St. 191.

Respecting a public official in his relation to those requirements of his office that pertain to the public rather than to the individual, it is said that "His position is strictly analogous to that of a private agent, who, for failing to execute the duties of his agency is not answerable to any one but his principal. Such an officer is the agent of the State, or of the municipality; and for failing to execute the duties which the State, or the municipality,

requires of him, he is not answerable directly to any citizen, however much the latter may be damaged by his *nonfeasance*. * * * Take, again, the case of an overseer of highways. From his mere neglect to discharge his duty, and keep the highways in repair, a traveler may suffer grievous damage, yet it has been frequently decided in England and in this country that the traveler thus injured cannot maintain an action against him", for the reason that he is an officer of the public and not of the traveler. 5 Thompson, Negligence (2d ed.) §6392. Judge Thompson, in the above section, avails himself of an illustration from Cooley, Torts, to the effect that where a policeman goes to sleep on his beat, and a robbery is committed which would not have occurred had the policeman been attending to his duty, while the municipality whose officer the policeman is, may punish him in any appropriate manner, the person robbed cannot maintain an action against him based on the loss incurred by the robbery, for the reason that the duty of the officer to be vigilant and attentive is a duty owing to the municipality, rather than to the individual.

On the subject of whether the duty of road officials to repair public highways is a duty owing to the public or to individuals, and consequently to whom such officials are answerable for a failure to perform such duty, Judge Thompson, in reviewing the conflict in decisions, states his deduction as follows: "Overseers of highways act directly for the public, and not distributively for individuals, and, upon the principles above announced, are not answerable, for mere neglect or nonfeasance in the execution of their office, to individuals damaged thereby." 5 Thompson, Negligence (2d ed.) §6397 *et seq*. Also as follows: "But the general doctrine is that these road officers are not personally liable in damages to travelers who may be injured in consequence of the defective condition of highways or bridges in their charge, for the reason that their neglect is regarded

as *nonfeasance merely,*—that is to say, a failure of duty toward the town, or county, or the municipal corporation, and not a failure of duty towards the particular individuals distributively." 5 Thompson, Negligence §6401. See also 2 Elliott, Roads and Sts. (3d ed.) §857, *et seq.* The rule is thus stated in 2 Shearman & Redfield, Negligence (6th ed.) §340a: "Whether such officers are to be deemed agents of the city in its corporate capacity, or public officers in law, in neither cases, if the act complained of is one of nonfeasance only can it be made the basis of a private action; yet the general rule may be said to be that if such act is one of misfeasance and directly injures the plaintiff he is entitled to maintain his action against them individually for injury wrongfully inflicted."

In an action brought to recover damages for the death of a person caused by the defective condition of an approach to a bridge over a watercourse, the Supreme Court used the following language: "It is a well settled proposition that when subdivisions of a State are organized solely for a public purpose by a general law, no action lies against them for an injury received by any one on account of the negligence of the officers of such subdivision, unless a right of action is expressly given by statute; that such subdivisions, as counties and townships, are instrumentalities of government and exercise authority given by the State, and are no more liable for the acts or omissions of their officers than the State." *Board, etc.* v. *Allman, supra,* 576. To the same effect is *Cones* v. *Board, etc.* (1894), 137 Ind. 404, 37 N. E. 272, involving a case where a person suffered an injury by reason of the defective condition of a public highway. As indicated in the Allman case, the decision is based on the "broad ground that counties, being subdivisions of the State, are instrumentalities of government and exercise authority given by the State." All the reasons that may be given why counties and townships should be exempted from liability in matters under consideration do

not apply to road supervisors and township trustees. It may be said of such officials, however, that they are chosen pursuant to authority granted by the State, and that they must be numbered among the agencies or instrumentalities by which the State performs its work of repairing roads and bridges, and that in performing such work they are discharging a duty owing to the State.

In *McConnel* v. *Dewey* (1877), 5 Neb. 385, under circumstances very similar to those presented here, it is held that liability against a road supervisor in his personal capacity does not exist. The decision is grounded on the fact that such official exercises duties of a general public nature and for the public at large; that the legislature, having charged such official with certain duties in the repair of roads, and fixed a penalty for their nonperformance, it will not be presumed, in the absence of legislative enactment, that the legislature intended an additional remedy for the benefit of individuals. There is a like holding in *Nagle* v. *Wakey* (1896), 161 Ill. 387, 43 N. E. 1079, involving township commissioners of highways, the decision being based on the additional grounds that such officers are liable to a penalty for a refusal to serve if elected, and that as a consequence, their situation is similar to that of townships and counties, in that their duties are imposed on them without their consent, and that such duties are exclusively for public purposes. To the same effect is *Worden* v. *Witt* (1895), 4 Idaho 404, 39 Pac. 1114, 95 Am. St. 70, involving county commissioners, the decision being based on the public nature of the duties performed by such officer in repairing highways and bridges. It is there said, in substance, that had there been any intention on the part of the legislature to impose such a liability on such officials, it would have been so declared by enactment. See, also, *Robinson* v. *Rohr* (1889), 73 Wis. 436, 40 N. W. 668, 9 Am. St. 810, 2 L. R. A. 366.

In each of the cases *Dunlap* v. *Knapp* (1863), 14 Ohio

St. 64, 82 Am. Dec. 468, and *Lynn* v. *Adams* (1850), 2 Ind. 143, under circumstances very similar to those presented by the case at bar, it is held, after an examination and analysis of the decisions, both American and English, that a road supervisor is not personally liable to an individual for damages resulting from his mere neglect to repair a bridge. All the reasons given in support of the decision in those cases are perhaps not applicable here, but nevertheless, they tend strongly to support the conclusion of the trial court in this case.

From early in the history of state government in Indiana, it has been the policy of the State, through its legislative department to delegate to political subdivisions the duty of repairing public roads and bridges in certain cases. Provision has been made also for selecting certain local officers, through whom such delegated duty should be performed. The tasks required of these officials have from time to time become more onerous, and provision has been made for the infliction of penalties in the nature of fines or otherwise for the failure to discharge such delegated duties. Among such local officers are road supervisors and township trustees, who are subject to punishment, as we have indicated, for a failure to perform their respective duties. There has at no time in the history of the State been any statutory provision creating the sort of liability sought to be established and enforced in this action, and we know of no decision by any court of appellate jurisdiction in this State, that such a liability may be established or enforced. Considering the manifold burdens of their respective offices, these officials are poorly paid. If they should be subjected to a liability to respond in damages under circumstances presented here it is doubtful whether competent and responsible persons could be induced to assume the burdens imposed. If liable in this action, no reason occurs to us why they would not be liable under like circumstances when the way involved is a public high-

way proper rather than a bridge as a part thereof within their respective jurisdiction. Doubtless as population increases, business expands and the necessity for more frequent, rapid and safe travel over public ways becomes more urgent, sound public policy may require that as a step in keeping such ways in a condition of repair commensurate. with the needs, a liability such as is sought to be imposed here may be created. The legislature should determine when we have reached such state of development, and should provide accordingly.

We hold that whatever obligation rested on appellees as officials to repair the bridge in question was in the nature of a duty owing to the State or public at large, rather than to individuals distributively, and that appellees in their personal capacity are not liable to appellant for the mere failure to perform such duty by repairing the bridge, and that as a consequence the judgment should be affirmed. The negligent performance of an official duty by a road supervisor or township trustee to the damage of an individual is not included within the scope of this decision. Judgment affirmed.

NOTE.—Reported in 109 N. E. 938. As to liability of highway officers for injuries occasioned by their neglect of duty, see 83 Am. Dec. 563. See, also, under (1) 5 Cyc. 1095; (2) 37 Cyc. 216; (3) 37 Cyc 238; (4) 5 Cyc. 1078; (5) 5 Cyc. 1088.