**SOUTHERN INDIANA GAS AND ELECTRIC COMPANY,**
Plaintiff–Appellant,

v.

**DEPARTMENT OF HIGHWAYS, STATE OF INDIANA, Gene K. Hallock, Director, Daniel A. Novreske, Deputy Director, Donald W. Lucas, Deputy Director, E. Wayne Walters, Deputy Director, Kenneth R. Hoover, Deputy Director, Defendants–Appellees.**

No. 82A01–8803–CV–87.

Court of Appeals of Indiana,
First District.

Feb. 16, 1989.

George A. Porch, Bamberger, Foreman, Oswald and Hahn, Evansville, for plaintiff-appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for defendants-appellees.

NEAL, Judge.

### STATEMENT OF THE CASE

Plaintiff-appellant, Southern Indiana Gas and Electric Company (SIGECO), appeals from a decision of the Vanderburgh Circuit Court denying its complaint seeking compensation from the defendant-appellee, the Indiana Department of Highways (the State), for the expenses incurred in relocating its utility facilities from a public right-of-way upon the State's order.

We affirm.

### STATEMENT OF THE FACTS

Just prior to 1913, SIGECO entered into a franchise agreement with the City of Evansville to provide electricity and gas

service to Evansville citizens. In June of 1917, pursuant to statute, SIGECO surrendered its individual franchises to the State in exchange for an indeterminate permit issued by the Public Service Commission of Indiana. Pursuant to both the franchise agreement and the indeterminate permit, SIGECO occupied many of the public rights-of-way in Evansville with the gas and electric facilities it utilized to serve the public. Specifically, it maintained numerous utility facilities in, on, and under Division Street.

Prior to 1982, Division Street was a major east-west thoroughfare running through the heart of Evansville. As were most of the city's streets, Division Street was dedicated by plat with the adjacent landowners retaining fee ownership in the land to the center of the street. In 1982, the State commenced construction of an elevated, six lane, limited access highway referred to as the Russell Lloyd Expressway (the Expressway). The Expressway runs in an east-west direction through Evansville partially on and along the south side of Division Street. In order to construct the Expressway, the State purchased in fee a strip of land 50 to 300 feet wide adjacent and to the south of the length of Division Street. The actual traveled portion of the Expressway is largely located on this land, although it occasionally occupies a portion of the old Division Street right-of-way. Division Street continues to exist in part, serving as a one-way westerly frontage and access road and as on and off ramps where it has not been consumed by the Expressway itself.

When construction on the Expressway began, many of SIGECO's original utility facilities as well as additional facilities subsequently installed were still functional and in use for the benefit of the public. SIGECO maintained its facilities in and on Division Street without disruption until 1982 at which time the State informed it that construction plans for the Expressway would substantially affect its facilities located there. By order of the State, SEIGECO was required to eliminate all of its facilities in or near the path of the Expressway which might interfere with construction or pose a safety hazard. This contemplated the removal and relocation of all of SIGECO's utility facilities from the Division Street right-of-way.

A dispute arose between the parties as to who should bear the cost of relocating the facilities. In order to allow construction to commence, however, the parties entered into a nonwaiver agreement whereby SIGECO agreed to relocate the facilities at its own expense while reserving the right to later litigate its claim for compensation. On May 1, 1984, SIGECO filed its complaint seeking compensation. After conducting limited discovery, the parties agreed to a bifurcated trial with the first portion addressed solely to the issue of liability while reserving the question of damages for further proceedings.

For purposes of clarification, the only question at issue at trial was whether SIGECO was entitled to compensation of expenses incurred in removing its utility facilities from a public right-of-way. Not at issue was whether SIGECO was entitled to compensation for the relocation of its facilities from real estate it owned or in which it had a private easement. To the extent SIGECO incurred expenses of the latter type, the State reimbursed it. With regard to the former, the trial court determined that SIGECO was not entitled to compensation for such and entered judgment in favor of the State. From this judgment SIGECO appeals.

## ISSUE

SIGECO raises the following issue for our review:

Whether the trial court erred in determining SIGECO was not entitled to recover the expenses of relocating its utility facilities from a public right-of-way.

## DISCUSSION AND DECISION

By reason of the franchise agreement and subsequent surrender of such in exchange for an indeterminate permit, SIGECO was granted the right to occupy the streets of Evansville to supply gas and electricity to the city's population. SIGE-

CO contends that having obtained the right to occupy the streets, it acquired a property right. It argues that the State's conduct in ordering it to relocate its facilities from those streets impaired its contract rights and had the effect of taking its property without compensation in derogation of the rights secured by the Indiana and United States Constitutions. We disagree.

■ SIGECO's right to locate its utility facilities in the streets is subject to the exercise of the police power by the State in the interest of public health, safety, and convenience. This limitation was articulated by our supreme court in *Grand Trunk Western Railway Co. v. City of South Bend* (1909), 174 Ind. 203, 89 N.E. 885. In *Grand Trunk* the railroad, which operated through a portion of South Bend, contracted with the city to lay a second track on one of the city's streets. Subsequently, however, the city repealed that portion of the ordinance granting the franchise which permitted the railroad to lay a second track. The railroad brought suit seeking to enjoin the city from interfering with its attempt to lay the second track. In affirming a judgment in favor of the city, the supreme court held that the city's right to exercise the police power in the interest of public safety and convenience cannot be contracted away. Thus, whatever right the utility obtained by reason of the franchise agreement was subject to the exercise of the police power in the interest of public safety and convenience.

Furthermore, in *New Orleans Gaslight Co. v. Drainage Commission of New Orleans* (1904), 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831 the United States Supreme Court held that an individual required to comply with a regulation enacted for the public health and safety pursuant to the police power must do so at his own expense. The facts in *New Orleans* are remarkably similar to the situation in the case at bar. In *New Orleans* the gas company, pursuant to a franchise agreement, obtained the right to locate its utility facilities under the City's streets. Thereafter, in order to accomodate the construction of a drainage system for the city, the gas company was required to relocate many of its pipes from under the city's streets upon demand of the commission. The city refused to compensate the gas company for the costs of relocating the pipes and the gas company brought suit alleging that its property had been taken without compensation in violation of the 14th amendment of the United States Constitution. Affirming a judgment in favor of the commission, the Supreme Court stated that the gas company did not acquire any specific location in the streets for its pipes under the general grant of authority to use the streets. The Court noted further that the exercise of police power in the interest of public health and safety cannot be contracted away and whatever rights the gas company obtained were subject to any proper regulations as might be required in the execution of such. The Supreme Court held, therefore, that the uncompensated obedience to a regulation enacted for the public safety pursuant to the police power of the State did not amount to taking property without just compensation. In complying with such a regulation at its own expense, none of the gas company's property had been taken.

Likewise, in the case at bar whatever rights SIGECO acquired by reason of the franchise agreement were subject to any proper regulations as might be required in the interest of the public health and safety. The parties stipulated that the State's order required that SIGECO relocate only those utility facilities which interfered with the construction of the Expressway or imposed a safety hazard. Accordingly, therefore, SIGECO's compliance with an order imposed in the interest of the public safety at its own expense did not amount to taking its property without due compensation.

■ SIGECO also contends it is entitled to be compensated for its relocation expenses under the terms of the Indiana Relocation Assistance Act (the Relocation Act), IND.CODE 8–13–18.5–1 to –20. The stated purpose of the act is to provide "for the fair and equitable treatment of persons displaced from homes, businesses, or farms by reason of acquisition of real property for a public improvement of agencies of the

State of Indiana ... in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole." IND.CODE 8–13–18.5–1. An agency acquiring real property is required to provide two types of relocation assistance, including payments for moving and other expenses incurred by persons displaced from their homes or businesses. IND.CODE 8–13–18.5–3. As seen, relocation assistance is available only to displaced persons. The only question at issue before us, therefore, is whether SIGECO is a displaced person as defined under the Relocation Act.

IND.CODE 8–13–18.5–2(d) defines a displaced person as follows:

The term "displaced person", or the terms "displaced" or "displacement" with reference to any person, means any person who moves from real property, or moves his personal property from real property, by reason of the acquisition of such real property and the improvements located thereon, or by reason of the partial acquisition of real property to the extent that continued use thereof by the owner or occupant is rendered impossible or impracticable, or as the result of the written order of the acquiring agency to vacate such real property intended to be acquired by the agency, or as the result of an order issued by an agency engaged in code enforcement activities to vacate such real property.

In essence, a person becomes displaced after the real property he occupies has been acquired by an agency, whether by negotiated purchase or condemnation. *City of Mishawaka v. Fred W. Bubb* (1979), Ind. App., 396 N.E.2d 943. Additionally, a person becomes displaced upon receiving an order from an acquiring agency or an agency engaged in code enforcement activities to vacate the property.

SIGECO first contends that the State acquired Division Street rendering it a displaced person. It advances several arguments in support of this claim, asserting there has been a total or partial acquisition. Each of these arguments involves the State's purchase of the strip of land immediately adjacent and to the south of Division Street prior to construction of the Expressway. SIGECO points out that it is undisputed that the landowners of that property owned the fee to the center of Division Street. In purchasing the strip of land to the south, SIGECO contends that the State acquired in fee a portion of Division Street from its south edge north to the center of the street. Relying on this purchase, SIGECO claims that either (1) there has been a total acquisition of the south half of Division Street, the portion of the street from which a majority of its facilities were relocated; or (2) there has been a partial acquisition of the south half of Division Street by reason of the State's activities on the adjacent southern strip of land; or (3) there has been a partial acquisition of the north half of Division Street by reason of the State's purchase and construction on the south half of the street. We disagree with SIGECO's contentions.

Public highways are established pursuant to legislative authority. All roads laid out under legislative enactment are public highways belonging to the State. *State ex rel. Board of Commissioners of Hendricks County v. Board of Commissioners of Marion County* (1908), 170 Ind. 595, 85 N.E. 513; *Cones v. Board of Commissioners of Benton County* (1894), 137 Ind. 404. Thus, in the absence of a statutory provision to the contrary, ownership of public ways lies in the State. *Lamphier v. State* (1915), 59 Ind.App. 661, 109 N.E. 938. Likewise, control of the public highways and streets rests with the state. *Board of Commissioners of Hendricks County, supra; Cones, supra; State v. Town of Roseland* (1978), 178 Ind.App. 661, 383 N.E.2d 1076; *Lamphier, supra.* Both county and municipal streets are a part of the State Highway system. IND.CODE 8–11–2–3. It is undisputed that Division Street was a preexisting public right-of-way. Hence, as discussed above Division Street was owned by the State. It is axiomatic that an individual cannot purchase that which it already owns. Because the Division Street right-of-way already belonged to the State, there was no acquisition within the meaning of the Relocation Act.

That the State acquired the fee underlying the preexisting right-of-way by reason of its purchase of adjoining land is of no consequence. The State already owned the Division Street right-of-way. Obtaining the fee underlying the south half of the street was an incidental result of purchasing the adjacent land. That the State purchased land beyond that which it already owned does not mean that SIGECO had to move from Division Street by reason of that acquisition. SIGECO was required to move its facilities from Division Street because the State commenced highway construction on the right-of-way which it already possessed. There was no acquisition, total or partial, of all or part of Division Street and SIGECO is not entitled to relocation assistance.

 SIGECO also maintains that the State acquired Division Street by reason of an agreement transferring maintenance and administration of the street from the city to the State prior to construction of the Expressway. As discussed, public ways are owned and controlled by the State. As a general rule, however, control is exercised through the instrumentality of local governmental subdivisions. *Board of Commissioners of Hendricks County, supra.* Prior to 1976, IND.CODE 8–13–5–11 permitted the State to eliminate from the state highway system any portion of a highway, and the city or town within which that street was located had to bear the responsibility of maintaining it. That statute was repealed in 1976 and the legislature enacted IND.CODE 8–11–2–9 and –10 authorizing the transfer of streets between systems. IND.CODE 8–11–2–10 requires a memorandum of agreement signed by both the transfering unit and the unit assuming jurisdiction of the street. The State always retains ownership of the street, however. Thus, the transfer of a right-of-way between the state highway system and a municipal street system is not a transfer or conveyance of property or title. Rather, it is merely the transfer of control. Accordingly, an acquisition did not occur when the State assumed control of the Division Street right-of-way. It could not acquire Division Street by reason of this transfer because it already possessed the right-of-way.

 SIGECO also contends it is entitled to relocation assistance under the act because it was required to move as a result of the State's order. A person qualifies for assistance under the Relocation Act, if the order requiring him to vacate his real property is issued by an acquiring agency or an agency engaged in code enforcement. IND.CODE 8–13–18.5–2(d). Regarding the former, as we have held, the State did not acquire Division Street and thus was not an acquiring agency. As to the latter, IND. CODE 8–13–18.5–2(*l*) defines the term code enforcement as follows:

The term "code enforcement" means any project or program for the elimination or prevention of the development or spread of deteriorated or deteriorating areas through a systematic inspection of buildings and structures in any such area and the enforcement of codes or ordinances establishing standards for the condition and maintenance of dwellings, buildings, or premises as safe, sanitary and fit for human habitation.

SIGECO fails to cite any authority holding that the State's activities in issuing the order to relocate from Division Street constituted code enforcement. It only baldly asserts that the term "premises" set forth in the statute includes highways and points out that the State required SIGECO to move in the interests of safety. The State was engaged in constructing a highway. It was not enforcing codes or ordinances or inspecting buildings or dwellings to insure that they were safe for human habitation. The department of highways builds and maintains highways. That it was attempting to build the Lloyd Expressway safely does not transform those construction activities into code enforcement activities. Accordingly, SIGECO was not a displaced person under the act and was not entitled to relocation assistance.

SIGECO also cites *Fox v. Ohio Valley Gas Corp.* (1968), 250 Ind. 111, 235 N.E.2d 168 for the proposition that an abutting landowner cannot prohibit or object to the

occupation of abutting private right-of-way by a utility pursuant to a contract held by the utility. This argument is wholly without merit. The State did not order SIGECO to relocate its facilities from Division Street under the guise of its rights as an abutting landowner. Rather, it did so in the exercise of its police power in the interest of public safety and convenience in order to construct the Expressway. As discussed above, such action was within its power and appropriate.

For the same reason SIGECO's assertion that IND.CODE 36-7-3-16(b) bars the relocation of its utility facilities without payment must fail. That statute provides:

Notwithstanding this article, vacation proceedings do not deprive a public utility of the use of all or part of a public way or public place to be vacated, if at the time the proceedings are instituted the utility is occupying and using all or part of that public way or public place for the location of its facilities.

SIGECO contends that Division Street has necessarily been vacated due to its changed nature as a result of the construction project and maintains that it is entitled to compensation because the statute provides that vacation proceedings do not deprive a utility of its right to locate in a public way. Assuming that there has been a vacation of Division Street, which we do not, any right SIGECO had to locate its facilities in Division Street was subject to the exercise of the State's police power in furtherance of the public safety. The State's order to relocate was within the scope of this rule and SIGECO is not entitled to compensation in complying with such. *New Orleans, supra.*

The dissent argues that SIGECO is entitled to be reimbursed for the expenses it incurred in relocating its facilities from Division Street. In support of this position, it relies upon *City of Columbus v. Indiana Bell* (1972), 152 Ind.App. 22, 281 N.E.2d 510, a case neither cited nor argued by the parties. *Columbus* is not applicable to the case at bar, however. That case involved an urban renewal project and concerned utility facilities in alleys and streets vacated by the Department of Urban Renewal. The holding therein is specifically limited to urban renewal projects. 177 Ind.App. at 28, 281 N.E.2d at 513. Our decision here is not contrary to or inconsistent with that holding. Urban renewal projects contemplate the taking of all property in a blighted area, vacating all streets and alleys, removing all utilities, and creating a new urban design. Such a project and the purpose of the urban renewal statute is wholly different from the highway construction project undertaken here.

Here, the State owned the street and continued to use it; it did not vacate Division Street. IND.CODE 8-13-18.5-1 states that the purpose of the Relocation Act is to aid persons "displaced from homes, businesses, or farms by reason of an *acquisition* of real property for a public improvement." A displaced person is defined as "a person who moves from real property, or moves his personal property from real property by reason of the *acquisition* of such real property and the improvements located thereon...." IND.CODE 8-13-18.5-2(d). As previously discussed, there has been no acquisition here, nor has there been a vacation of territory. SIGECO was a licensee on state property which will continue to be used as a state highway. SIGECO's occupancy by license of Division Street conflicts with that purpose.

Accordingly, for the above reasons, the judgment is affirmed.

JUDGMENT AFFIRMED.

RATLIFF, C.J., concurs.

CHEZEM, J., dissents with opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent. The common law rule in the State of Indiana has been that a utility cannot recover expenses incurred for relocation of equipment in the public right-of-way. *See Singer, et al. v. Washington Water, Light and Power Co.* (1925) 83 Ind. App. 720, 149 N.E. 918. However this court held that the Redevelopment of Cities and Towns Act of 1953 (Redevelopment

Act) [1] displaced the common law rule for such expenses incurred in urban redevelopment. *City of Columbus v. Indiana Bell Telephone Co.* (1972) 152 Ind.App. 22, 281 N.E.2d 510.

In *Columbus* the City required Indiana Bell to remove its facilities "in, on, under and over" streets which were to be developed by the Columbus Redevelopment Commission. Indiana Bell sought relief in the form of declaratory judgment requiring the city to compensate it for the relocation of its facilities. This Court held that Indiana Bell's facilities in the streets, alleys and public ways were not a revocable license, but rather were a compensable property interest and held that the Redevelopment Act created a "statutory obligation for payment of relocation costs of a private utility." *Id.,* 152 Ind.App. at 28, 281 N.E. 2d at 513.

The language of the statute which created the statutory obligation read as follows:

The commissioners are authorized to make relocation payments to or with respect to persons (including families, business concerns and others) displaced by an urban renewal project, for which reimbursement or compensation is not otherwise made, including the making of such payments financed by the federal government.[2]

The Redevelopment Act, and its recodified successor found at I.C. 36-7-1-1 et seq., includes within its coverage the "opening, closing, relocation, widening and improvement of boulevards, streets and alleys." The payment provision of the

Indiana Relocation Act is very similar to this provision.[3] The provisions of the Indiana Relocation Act do not specifically exclude payments to utilities. Furthermore, to exclude utility companies from the payment provisions, would require that we distinguish between the urban renewal statute, which would compensate utilities for relocation from a right-of-way under *Columbus,* and the highway relocation statute. Accordingly, I would apply the rationale of *Columbus* to this case, reverse and remand for a trial on damages.

---

1. I.C. 18-7-7-1, *et seq.* (Burns Ind.Stat.Ann. 1974).

2. I.C. 18-7-7-32 (Burns Ind.Stat.Ann.1974).

3. I.C. 8-13-18.5-3 reads as follows:
 Payment to dislocated person—Items included. —Whenever the acquisition of real property for a project undertaken by any agency, or a program of code enforcement by any agency in the state, will result in the displacement of any person on or after the effective date [September 2, 1971] of this chapter, such agency shall make payment to any displaced person, upon proper application therefore as approved by the agency head, for

(1) actual reasonable expenses in moving himself, his family, business, farm operation or other personal property;
(2) actual direct of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the head of the agency; and
(3) actual reasonable expenses in searching for a replacement business or farm, not to exceed a maximum of five hundred dollars [$500].