The CITY OF BOONVILLE,
Appellant/Cross–
Appellee,

v.

AMERICAN COLD STORAGE,
et al., Appellees.

No. 87A01–1004–PL–167.

Court of Appeals of Indiana.

June 13, 2011.

Rehearing Denied Aug. 25, 2011.

James L. Petersen, Brian J. Paul, Hilary G. Buttrick, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellant/Cross–Appellee.

Leslie C. Shively, Shively & Associates, P.C., Evansville, IN, Attorney for Appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

The City of Boonville ("Boonville") brings this interlocutory appeal following the trial court's denial of its motion to dismiss in favor of American Cold Storage NA, et al. (collectively "Landowners"). Landowners cross-appeal.

We affirm in part, reverse in part, and remand.[1]

### ISSUES

1. Whether tax-exempt parcels should be counted in determining whether a remonstrance has been signed by 65% of owners of land in an annexed territory.

2. Whether Landowners demonstrated standing to bring a declaratory judgment action to challenge Boonville's annexation ordinance.

In their cross-appeal, Landowners raise the following issue:

3. Whether parcels that abut public roadways, though not part of the annexed territory designated by Boonville, should be counted in determining whether a remonstrance has been signed by 65% of the owners of land in the annexed territory.

---

1. We heard oral argument on May 16, 2011. We thank counsel for their able presentations.

## FACTS

Boonville is located in Warrick County, Indiana, and is "a municipal corporation and political subdivision organized under the laws of the State of Indiana." (Boonville's App. 26). On July 7, 2008, Boonville approved Ordinance 2008–2, annexing 1,165 acres of real estate located to the west of Boonville's geographic limits. Public highways border two sections of the proposed annexed territory. Landowners are Warrick County "residents, taxpayers and owners of real property" who oppose the annexation. (Boonville's App. 26).

On October 3, 2008, Landowners filed their "Written Remonstrance and Verified Complaint for Declaratory Relief." (Boonville's App. 24–30). In Count I (Remonstrance), Landowners object to Ordinance No.2008–2, asserting that, for numerous reasons, the annexation should not take place. (Boonville's App. 26–28). In order for Landowners to have standing, the remonstrance must be signed by at least 65% of the owners of land in the annexed territory (the "65% rule"). Ind.Code § 36–4–3–11(a)(1).[2] In Count II (Claim For Declaratory Relief), Landowners incorporate their remonstrance grievances and allege statutory deficiencies. (Boonville's App. 29).

On November 26, 2008, Boonville filed a motion to dismiss under Indiana Trial Rule 12(B)(1), arguing that the remonstrators did not meet the 65% rule's statutory threshold. Boonville also filed a supplement to the motion on February 13, 2009. Boonville argued that a number of the names on Landowners' signature list should not be counted (1) "because they are the signatures of joint owners of a single parcel of land"; (2) "because [the remonstrators] executed waivers of the right to remonstrate to annexation as part of a sewer contract"; (3) some of the signatures "relate to parcels that are not in the Annexed Territory"; (4) some of the signatures "reference a duplicate parcel"; and (5) some of the signatures "reference no parcel at all." (Boonville's App. 156–58).[3]

On March 18, 2009, Landowners filed their brief in opposition to Boonville's motion to dismiss. Therein, they argued that (1) they had satisfied the 65% rule; (2) Boonville had failed to show that sewer waivers were effective; (3) Boonville had failed to provide notice to some landowners whose parcels were included in the proposed annexed territory; and (4) Boonville had failed to comply with the statutory prerequisites for the adoption of the ordinance.

Boonville filed its reply in support of its motion to dismiss on May 5, 2009. Boonville alleged the following: (1) that tax-exempt parcels should be counted in determining the total number of landowners in the annexed territory; (2) that landowners who executed remonstrance waivers pursuant to sewer contracts should not be counted for remonstrance purposes; (3) that owners of parcels that abut public roadways neither own nor control the roadways and, therefore, lack standing as owners of land within the annexed territory; and (4)

---

**2.** Landowners claim to have 253 valid signatures from 275 parcels in the annexed territory. Thus, Landowners purport to have the signatures of 92% of the owners of land in the annexed territory. Boonville, on the other hand, believes that Landowners have garnered 189 valid signatures from 341 parcels, resulting in signatures from 55.43% of the owners of land in the annexed territory.

**3.** These factual variables, while important to Boonville's challenge to the remonstrance, are not issues in this appeal. They are important, however, in putting the appellate issues in context.

that Landowners, upon the dismissal of their remonstrance, cannot pursue a declaratory judgment action. (Boonville's App. 194–95).

A hearing was held on the various motions, and the trial court requested briefing on four legal issues, including the three issues that are considered in this appeal. After briefing, the trial court found in favor of Landowners on the issue of tax-exempt parcels and standing to bring a declaratory judgment action. The court found in favor of Boonville on the issue of whether parcels that abut public thoroughfares, though not part of the designated annexed territory, should be counted in determining whether a remonstrance has been signed by 65% of the owners of land in the annexed territory.[4]

After seeking and obtaining permission to pursue an interlocutory appeal, Boonville now appeals.

### DECISION

1. *The Inclusion of Tax–Exempt Parcels in Determining the 65% Requirement*

■ Boonville contends that the trial court erred in determining that tax-exempt parcels should not be included in determining the 65% requirement. The parties agree that the question presented is one of statutory interpretation; therefore, this court's review is de novo. *See Sanders v. Bd. of Comm'rs of Brown County,* 892 N.E.2d 1249, 1251 (Ind.Ct.App.2008), *trans. denied.* De novo review provides no deference to the trial court's interpretation. *Ind. Pesticide Rev. Bd. v. Black Diamond Pest & Termite Control, Inc.,* 916 N.E.2d 168, 181 (Ind.Ct.App.2009), *trans. denied.* Our goal in statutory con-struction is to determine and implement the intent of the legislature. *Id.*

In the present case, the applicable statute, Indiana Code section 36–4–3–11, states:

(a) Except as provided in section 5.1(i) of this chapter and subsections (d) and (e), whenever territory is annexed by a municipality under this chapter, the annexation may be appealed by filing with the circuit or superior court of a county in which the annexed territory is located a written remonstrance signed by:

(1) at least sixty-five percent (65%) of the owners of land in the annexed territory; or

(2) the owners of more than seventy-five percent (75%) in assessed valuation of the land in the annexed territory.

The remonstrance must be filed within ninety (90) days after the publication of the annexation ordinance under section 7 of this chapter, must be accompanied by a copy of that ordinance, and must state the reason why the annexation should not take place.

(b) On receipt of the remonstrance, the court shall determine whether the remonstrance has the necessary signatures. In determining the total number of landowners of the annexed territory and whether signers of the remonstrance are landowners, the names appearing on the tax duplicate for that territory constitute prima facie evidence of ownership. Only one (1) person having an interest in each single property, as evidenced by the tax duplicate, is considered a landowner for purposes of this section.

Before interpreting the wording of subsection (a)(1) of Indiana Code section 36–

---

4. The court found for Boonville on the fourth issue-whether the signatures of parcel owners who signed certain sewer contracts should be counted under Indiana Code section 36–4–3–11(a)(1). The court's finding is not an issue in this appeal.

4-3-11, we review significant cases that have discussed the remonstrance procedure under the statute. *In Matter of Annexation of Certain Territory to the City of Princeton,* 167 Ind.App. 638, 339 N.E.2d 807, 810 (1976), the remonstrators argued that tax-exempt parcels should not be counted for purposes of the 75% rule. In deciding the case, we noted that the statutory definition of "assessed valuation" provides that such "value" or "valuation" is "an amount equal to thirty-three and one-third percent (33 1/3%) of the true cash value of property." *Id.* at 809 (citing I.C. § 6-1-20-10 (1971)). We further noted that "this definition refers to the cash value of property, not the cash value of taxable (as opposed to tax exempt) property." *Id.* We then noted that statutory law requires that "all tangible property within the jurisdiction of this state on the assessment date shall be subject to assessment and taxation." *Id.* (citing I.C. § 6-1-21-1 (1971)). Finally, we noted that while another statutory provision does exempt parcels of land from taxation, "it does not purport to exempt the same from assessment." *Id.* at 810. We concluded that because the property was subject to assessment, it "therefore [was] accorded an assessed valuation by the assessor." *Id.* We held that the language of the statute did not support the remonstrators' conclusion and that both taxable and tax exempt property should be considered in determining a remonstrator's standing. *Id.* at 811.

In *Arnold v. City of Terre Haute,* 725 N.E.2d 869, 870 (Ind.2000), our supreme court examined how to "count the remonstrators to an annexation in order to tell whether a majority of the owners of land have remonstrated, as required by [what is now I.C. § 36-4-3-11(a)(1) ]." The court held that the counting "regime" is better described as " 'one-parcel-one-vote' than as 'one-owner-one-vote.' " *Id.*

In the instant case, Landowners argue that by using the term "tax duplicate" in subsection (b), the legislature is limiting the phrase "owners of land" under the 65% rule in subsection (a)(1) to those who own taxable parcels. In support of their argument, Landowners emphasize that Indiana Code section 6-1.1-22-3(a) states that a county auditor shall prepare an annual tax duplicate, defined as "a roll of property taxes payable in the year for the county." They reason that tax-exempt parcels are not listed on a tax duplicate and that owners of tax-exempt parcels cannot be counted as "owners of land" under Indiana Code 36-4-3-11(a)(1).

Landowners misinterpret the applicable statutes. First, Indiana Code section 6-1.1-22-3(a)(1) provides that the tax duplicate must show "the value of all the assessed property of the county." As we state in *Princeton,* tax-exempt property has an assessed value. 339 N.E.2d at 809-10. Thus, tax-exempt property is listed on a tax duplicate; indeed, the tax duplicate attached to Boonville's motion to dismiss lists various tax-exempt parcels located in Warrick County.[5] Second, the tax duplicate, as the term is used in Indiana Code section 36-4-3-11(b), is prima facie evidence of ownership. It is neither an irrebuttable nor a sole source of evidence.

In determining the legislative intent of the 65% rule as expressed in Indiana Code section 36-4-3-11(a)(1), we must consider

---

5. Prior to oral argument, Boonville filed an "Appellant's Motion to Correct Appendix." This motion was filed to correct the format of the disk of the tax duplicate originally attached to Boonville's motion to dismiss. We granted this motion from the bench, subject to any objection by Landowners. No objection has been filed, and we formally grant the motion by order issued on this date.

"not only what the statute says, but what it does not say." *Curley v. Lake County Bd. of Elections and Registration,* 896 N.E.2d 24, 37 (Ind.Ct.App.2008), *trans. denied.* The subsection does not limit the phrase "owners of land" under the 65% rule by including the modifier "taxable" before the word "land." We may not read into the statute that which is not the expressed intent of the legislature. *See Perry–Worth Concerned Citizens v. Bd. of Comm'rs of Boone County,* 723 N.E.2d 457, 459 (Ind.Ct.App.2000), *trans. denied.* Thus, we will not controvert the legislature's intent by reading the qualifier "taxable" into the statute.

In summary, we conclude that the language of the 65% rule, as expressed in Indiana Code section 36–4–3–11(a)(1), is not modified by the "signature counting" language of subsection (b) of the statute. We further conclude that the clear language of subsection (a)(1) indicates the legislature's intent that all property— whether taxable or tax exempt—should be counted in determining standing. Accordingly, we reverse the trial court on this issue.

2. *Landowners' Standing to Bring a Declaratory Judgment Action*

Boonville contends that the trial court erred in determining that Landowners are entitled to bring a declaratory judgment action, separate from the remonstrance, to raise "threshold jurisdictional issues, including compliance with notice requirements." (Boonville's App. 23). We agree.

▉▉▉▉ Annexation is an "essentially legislative function and courts should not micromanage it." *Bradley v. City of New Castle,* 764 N.E.2d 212, 215 (Ind.2002). Accordingly, it is "subject to judicial review only as provided by statute, and '[t]he larger object of the annexation statute is, as it always has been, to permit annexation

of adjacent urban territory.'" *Id.* (quoting *Rogers v. Mun. City of Elkhart,* 688 N.E.2d 1238, 1242 (Ind.1997)). As a general rule, a remonstrance is the exclusive means available to landowners within an annexed area for challenging an annexation proceeding. *In re Remonstrance Appealing Ordinance Nos. 98–004, 98–005, 98–006, 98–007, and 98–008 of the Town of Lizton,* 769 N.E.2d 622, 629 (Ind.Ct.App. 2002). Declaratory judgment actions are for the most part available only to taxpayers of the annexing city. *Id.* However, we have recognized two exceptions to the general rule.

In *Reafsnyder v. City of Warsaw,* 155 Ind.App. 455, 293 N.E.2d 540, 542 (1973), a landowner brought a declaratory judgment action, claiming that a proposed annexation was improper because her property was not contiguous to the annexing city. Because an annexing city does not have jurisdiction to annex noncontiguous land, we determined that the landowner's action was akin to an attack on the annexing city's jurisdiction. *Id.* at 543. We held that the landowner's claim was sufficient to establish standing to bring a declaratory judgment.

In *Langbehn v. Town of Merrillville,* 413 N.E.2d 680, 683 (Ind.Ct.App.1980), a landowner filed a declaratory judgment action alleging that the annexing city failed to prepare a written fiscal plan before passing the annexation ordinance. We held that the landowner's action was viable.

However, in *Matter of the Annexation Proposed by Ordinance No. X–01–95,* 774 N.E.2d 58, 64–65 (Ind.Ct.App.2002), we reviewed the limitations upon judicial review as outlined in *Bradley.* We stated:

The [*Bradley* ] court found that the only judicial review of annexation provided by statute is found in Indiana Code sec-

tions 36–4–3–11 through 13. Accordingly, our supreme court determined that judicial review of annexation should not extend beyond the confines of Sections 11 through 13 dealing with remonstrances. The court recognized exceptions to this rule where "plausible claims of fraud or discrimination are established" or where the annexing municipality commits procedural wrongs so severe that remonstrators' substantial rights are violated. Thus, in the absence of such exceptions, remonstrators may not challenge the annexation based on non-compliance with statutes that do not deal specifically with remonstrances. *Id.* at 64 (citations omitted).

The remonstrators argued that *Bradley,* a case dealing with remonstrances, was "inapplicable to the case at bar" and did not foreclose a declaratory judgment action "challenging noncompliance with non-remonstrance annexation statutes." *Id.* at 64–65. We noted that in *Bradley* our supreme court made it very clear that absent fraud, discrimination, or impairment of the remonstrator's substantive rights, judicial review "shall not extend beyond the confines of Sections 11 through 13." *Id.* at 65. We further noted that determination of whether the remonstrators were entitled to declaratory relief "would necessarily entail the very review that our supreme court has expressly prohibited." *Id.* Thus, we rejected the remonstrators' claim that the scope of review set forth in *Bradley* is inapplicable to declaratory judgment actions.

■ In the instant case, most of the claims in Landowners' declaratory judgment action are based on alleged deficiencies in notice, just as the remonstrators' claim in *In Re Ordinance No. X–01–95.*[6] Landowners also allege a "[f]ailure to include within the legal description of the proposed annexed area those properties contiguous to a public highway as required by I.C. § 36–4–3–2.5," (Boonville's App. 29), an allegation that is addressed as part of this appeal. Finally, the remonstrators allege the ordinance fails to contain equitable terms and conditions. However, this is an issue that cannot be brought in a declaratory judgment action. *See Matter of the Annexation Proposed by Ordinance No. X–02–93,* 652 N.E.2d 878, 880 (Ind.Ct. App.1995) (holding that the merits of the landowners' complaints about an annexation can be addressed only through a valid remonstrance, not a declaratory judgment action); *trans. denied.* We reverse the trial court's order on this issue and remand with directions that the declaratory judgment action be dismissed.[7]

### 3. *The Inclusion of Parcels that Abut Public Roadways*

■ The annexed territory is demarcated on one of its northern edges by Highway 62 and on another northern edge by Millersburg Road. (Boonville's App. 56–59). Boonville annexed certain parcels south of Highway 62 and the portions of Highway 62 contiguous to these parcels. Boonville also annexed parcels south of Millersburg Road and the portions of Mil-

6. Specifically, Landowners allege (1) failure to comply with the public notice requirements of Indiana Code section 36–4–3–2.1; (2) failure to provide notice by certified mail to all of the affected landowners within the proposed annexed territory as required by Indiana Code section 36–4–3–2.2; and (3) failure to include a detailed summary of the fiscal plan in the notices. (Boonville's App. 29).

7. We note that Landowners have requested an opportunity to expand upon their declaratory judgment claims in an evidentiary hearing. Landowners' claims do not pass the *Bradley* test; therefore, an evidentiary hearing is not warranted.

lersburg Road contiguous to those parcels. Boonville did not annex parcels north of Highway 62 and Millersburg Road.

Landowners contend that the trial court erred in ruling that parcels abutting Highway 62 and Millersburg Road on the north side should not be counted for purposes of the 65% rule. Landowners argue that because the owners of these adjacent properties have fee simple ownership of the land underneath the roadway rights-of-way up to the centerline, the parcels are "within" the annexed territory.

Indiana Code section 36–4–3–11(a)(1) requires a remonstrance petition to be signed by at least 65% of the owners of land "in the annexed territory." Relying on Indiana code section 36–4–3–2.5(b), Landowners claim that "all parcels contiguous to public highways [must] be included in the proposed annexation area." Landowners' Br. 11. However, the statute does not support Landowners' argument. The statute requires a municipality annexing property abutting a roadway to annex the roadway along with the property. This requirement presumably prevents municipalities from shirking responsibility for maintenance of roads bordering the annexed territory. The statute does not address the issue presented by Landowners.

It is apparent that Landowners have no standing to remonstrate under the 65% rule. First, the adjacent property owners have no property interest in Highway 62 and Millersburg Road. While the adjacent property owners technically have title to the centerline of the public roadways, they do not have the right to construct, lay out, alter, vacate, maintain, or otherwise control the roadways. Those powers are given to government entities. *See* I.C. § 8–17–1–2 (authorizing the county executive to establish, lay out, alter, widen, vacate, straighten, or change a public highway); I.C. § 8–23–2–4.1 (authorizing the Department of Transportation to construct, reconstruct, improve, maintain, and repair state highways); I.C. § 36–9–2–5 (authorizing local government to establish, vacate, maintain, and operate public ways). The adjacent property owners have no such rights, and while the property owners own the soil underneath these public roadways, they do not own the roadways themselves, which is all that is being annexed.

This point is illustrated by our decision in *Southern Indiana Gas & Electric Co. v. Department of Highways,* 533 N.E.2d 1289 (Ind.Ct.App.1989), *trans. denied.* In *Southern Indiana Gas,* a gas utility maintained facilities in, on, and under Division Street in Evansville. When the State began construction on a major expressway, it informed the utility that it had to remove its facilities from Division Street. The utility argued that the State should bear the cost of relocation because the utility was a "displaced person" within the meaning of Indiana's Relocation Act. The validity of the utility's argument depended on whether the State "acquired" property when it purchased a strip of land immediately adjacent to and south of Division Street. The utility argued that the State acquired a portion of Division Street from its south edge north to the center of the street.

Although the utility may have owned the soil to the centerline of the street, the street itself was controlled and owned by the State; thus, we concluded:

All roads laid out under legislative enactment are public highways belonging to the State. Thus, in the absence of a statutory provision to the contrary, ownership of public ways lies in the State. Likewise, control of public highways and streets rests with the [S]tate. Both county and municipal streets are a part of the State Highway system. It is undisputed that Division Street was a

preexisting public right-of-way. Hence, ... Division Street was owned by the State. It is axiomatic that an individual [entity] cannot purchase that which it already owns. Because the Division Street right-of-way already belonged to the State, there was no acquisition within the meaning of the Relocation Act. That the State acquired the fee underlying the preexisting right-of-way by reason of its purchase of adjoining land is of no consequence. The State already owned the Division Street right-of-way ... [The utility] was required to move its facilities from Division Street because the State commenced highway construction on the right-of-way which it already possessed. There was no acquisition, total or partial, of all or part of Division Street and [the utility] is not entitled to relocation assistance.

*Id.* at 1293–94 (citations omitted).

Here, the State—not the adjacent property owners—controls and owns Highway 62 and Millersburg Road. Although the adjacent property owners may have fee ownership of land running underneath these public roadways, they have no significant control over that land. The State alone has control over Highway 62 and Millersburg Road, and for all practical purposes, it has control of the land underneath the roads. The adjacent property owners cannot therefore be considered owners of land "in the annexed territory."

■ Second, Landowners have failed to show that they will be affected by the annexation. To have standing, a party must demonstrate a personal stake in the outcome of the lawsuit and, at a minimum, the immediate danger of sustaining some direct injury as a result of the annexing municipality's conduct. *Town of Lizton,* 769 N.E.2d at 628. A party may not assert a cause of action based solely on the infringement of the rights of others. *Id.*

In the present case, the adjacent property is not located within the Boonville city limits and thus would be beyond Boonville's power to regulate. The land inside the boundaries of a municipality comprises its territorial jurisdiction, and except where authorized by statute, a municipality cannot impose duties on landowners outside its territorial jurisdiction. I.C. § 36–1–3–9(a). Furthermore, land underneath public roadways is not assessed to the adjacent owner. I.C. § 6–1.1–4–14(a)(4). There is no danger that the annexation will affect the rights or the taxes paid by the adjacent owners on the north side of Highway 62 and Millersburg Road. The adjacent owners do not have standing to join in the remonstrance under the 65% rule, and we affirm the trial court's ruling on this issue.

### CONCLUSION

We reverse the trial court's ruling on the tax-exempt property and declaratory judgment issues, and we affirm the trial court's ruling on the adjacent landowner issue. We remand for further proceedings consistent with this opinion.[8]

Affirmed in part, reversed in part, and remanded.

NAJAM, J., and BAILEY, J., concur.

---

8. If the trial court finds that the remonstrance does not satisfy the 65% rule requirement, then the court must dismiss the remonstrance because the prerequisite to the trial court's exercise of subject matter jurisdiction over the remonstrance proceedings has not been met. *See City of Kokomo ex rel. Goodnight v. Pogue,* 940 N.E.2d 833, 836 (Ind.Ct.App. 2010).